AARON REID *v.* ZONING BOARD OF APPEALS OF
THE TOWN OF LEBANON
(15152)

Peters, C. J., and Callahan, Norcott, Katz and Palmer, Js.

Argued October 26, 1995—decision released January 30, 1996

*Walter A. Twachtman, Jr.,* for the appellant (plaintiff).

*Mary E. Driscoll,* with whom was *Edward B. O'Connell,* for the appellee (defendant).

KATZ, J. The plaintiff, Aaron Reid, is the owner of property in the town of Lebanon (town) subject to a variance granted in 1975 to his predecessor in title, Florence Kastner, which gave her the right to use the property on a year-round basis for her lifetime. That variance has become the subject of this appeal, which presents three related issues of whether: (1) the doctrines of res judicata and collateral estoppel bar reconsideration of the variance, where no appeal had been taken from the grant of that variance; (2) the variance was invalid from its inception because of the "life use" condition; and (3) No. 93-385 of the 1993 Public Acts (P.A. 93-385)[1] has any bearing on the variance.

The following undisputed facts are pertinent to this appeal. Kastner, the plaintiff's predecessor in title, applied to the defendant, the zoning board of appeals of the town of Lebanon (board), in 1972 requesting a variance to allow for year-round occupancy of her home located at 257 Deepwood Drive, Amston Lake, in Leba-

---

[1] Public Act 93-385 amended General Statutes § 8-6 by adding subsection (b), which provides: "Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance."

non (lot 120C). Kastner had requested the variance because of economic hardship following the death of her husband. This request was denied because "[g]ranting of the variance would present danger to public health and safety" and "[t]he hardship is not unique to the applicant." A second request, in 1973, was equally unsuccessful, based upon a finding that the hardship had been caused by the applicant. In 1975, Kastner resubmitted her request, this time asking the board to grant her the variance "for her life use of the property only." On the basis of its finding of personal hardship, the board granted the variance for "Mrs. Kastner's life use only, subject to the condition that Lots 149 and [120C] must be combined as one lot." The board also stated that the variance would not be effective until Kastner recorded it in the town land records.

Although Kastner combined lots 149 and 120C by quitclaim deed on September 22, 1975, the variance was not recorded until March 26, 1990. No appeal was taken from the granting of the variance in 1975 and Kastner continued to occupy the premises until she sold the property to the plaintiff in 1990.

On May 19, 1992, stating that the plaintiff's occupancy on a year-round basis violated Lebanon's zoning regulations, the Lebanon zoning enforcement officer (officer) ordered the plaintiff to cease occupying the premises at 257 Deepwood Drive as a year-round dwelling. The plaintiff appealed to the board claiming that the officer had incorrectly interpreted the terms of the variance granted to Kastner in 1975, which, he argued, gave him year-round occupancy. The board upheld the action of the officer, finding the cease and desist order to be valid.

The plaintiff appealed to the trial court claiming that the board's decision was arbitrary, illegal and an abuse of the board's discretion. Before the trial court, the

plaintiff argued, inter alia,[2] that he "is entitled to the benefit of the legal status that the variance was granted when it was passed back in 1975, to wit, it runs with the land and passes to subsequent owners (subject to the condition of Mrs. Kastner's survival)." The plaintiff argued that the variance, delimited to the period of Kastner's life use, is analogous to the creation of a life estate in real property so that the grantor can pass to the grantee a right to possess, use or enjoy property during the period of the grantor's life. The board argued, inter alia,[3] that because it had lacked the authority to grant a variance that was based on personal financial hardship, the variance was void ab initio.

The trial court determined that it was unreasonable for the board to have granted the variance with the condition that Kastner have year-round occupancy for her "life use only." The trial court stated that because "a zoning board of appeals lacks authority to impose

[2] Specifically, the plaintiff argued that because no appeal had been taken from the board's decision granting a variance to Kastner in 1975, the board was barred from reconsidering that grant in 1992 under either the doctrine of collateral estoppel or issue preclusion. Therefore, the plaintiff "is entitled to the benefit of the legal status that the variance was granted when it was passed back in 1975, to wit, it runs with the land and passes to subsequent owners (subject to the condition of Mrs. Kastner's survival)." The plaintiff also argued that the board's claim that he did not timely appeal an alleged original cease and desist order should be denied, because no such order was made part of the record. Lastly, the plaintiff argued, by analogy to the creation of life estates in real property, that because the variance granted in 1975 did not make Kastner's occupancy of the premises a condition, it did not terminate upon her cessation of occupancy of the premises. Pointing to the other conditions imposed on Kastner, the plaintiff stated that "[i]f the Zoning Board of Appeals wished to limit the variance to the time [during] which Mrs. Kastner occupied the property, it could have clearly done so with plain language."

[3] The board also argued before the trial court that the variance, if found to be valid, was not recorded in a timely manner and therefore the plaintiff is estopped from enforcing the variance. Because this argument was not made before this court, it is deemed abandoned. *Lonergan* v. *Connecticut Food Store, Inc.*, 168 Conn. 122, 134, 357 A.2d 910 (1975); *Hutensky* v. *Avon*, 163 Conn. 433, 434, 311 A.2d 92 (1972).

an unreasonable condition, the board was without jurisdiction to impose this condition when it granted the variance to Kastner in 1975." Further, the trial court found that because the "condition was an integral part of the board's decision," it was not severable and the variance was void ab initio. Accordingly, the trial court dismissed the plaintiff's appeal.

The plaintiff then filed a motion to reargue, in light of the legislature's passage of P.A. 93-385. The trial court denied this motion without comment. The plaintiff appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Thereafter, the plaintiff moved the trial court to articulate its reason for denying the plaintiff's motion to reargue. The motion was granted and, in its articulation, the trial court stated that because the 1975 variance was void ab initio, there was no variance to which the amendment could apply.

On appeal to this court, the plaintiff claims that the trial court improperly: (1) failed to apply the doctrines of res judicata and collateral estoppel to bar reconsideration of a variance granted by the board in 1975 and from which no appeal had been taken; (2) declared this variance void ab initio although the original granting of the variance had never been appealed and the plaintiff and Kastner had complied with other conditions of the variance in justifiable reliance on the validity of the variance; and (3) determined that P.A. 93-385 has no impact on this case when the facts of this case typify the problems sought to be remedied by the legislature. The board argues in response that: (1) the trial court properly concluded that the variance was invalid because (a) it contained an impermissible condition, (b) it had been based solely on personal hardship, and (c) the board "was 'impotent to reverse' " its 1972 decision denying the variance; (2) if the variance is valid,

the plaintiff was precluded from residing year-round on the property once Kastner had ceased to occupy the premises; and (3) P.A. 93-385 cannot be applied retroactively and, therefore, has no effect on this appeal because it changes existing case law stating that conditions that are illegal and are an integral part of the board's decision to grant the variance render the variance void.

At the outset we note that "land use regulation embodies a clash of conflicting forces: the common law right of a property owner to use his land as he pleases, as long as that use does not create a nuisance, and the exercise of the police power to regulate the use in the interest of public health, safety, morals and the general welfare of the community." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 1.2, citing *Steiner, Inc.* v. *Town Plan & Zoning Commission*, 149 Conn. 74, 76, 175 A.2d 559 (1961), and *Service Realty Corp.* v. *Planning & Zoning Board of Appeals*, 141 Conn. 632, 635, 109 A.2d 256 (1954). Variances play an important role in land use regulation. "The existence of the variance power recognizes that zoning regulations which permit some uses of land and limit or prohibit others will adversely affect individual property rights in some cases, and variances furnish elasticity in the application of the regulations so they do not operate in an arbitrary or confiscatory and therefore, unconstitutional manner. Without authorization to a board of appeals or some similar agency to grant variances, it would be difficult, if not impossible, to keep the law 'running on an even keel' and to prevent attacks upon the constitutionality of the zoning ordinance." R. Fuller, supra, § 9.1.

The passage of P.A. 93-385 reflects these strong public policy concerns regarding variances. "[I]n deference to the existing statutory scheme through which the legislature has chosen to define this field"; *Garrity* v.

*McCaskey*, 223 Conn. 1, 7, 612 A.2d 742 (1992); we first address the issue of whether P.A. 93-385, as it amended § 8-6 (b), affects the variance in this case. Because we decide that P.A. 93-385 should be applied retroactively, and that, consequently, any owner of 257 Deepwood Drive is entitled to year-round occupancy, we do not address the remaining claims.[4]

Our law governing variances is well settled. Section 8-6 (a) (3) provides in relevant part that a zoning board of appeals may "determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health,

---

[4] With respect to the plaintiff's first claim that res judicata and collateral estoppel bar reconsideration of the 1975 variance because of failure to appeal timely, we note that the existence of a claim is a necessary precondition to the question of whether the doctrines bar subsequent litigation. *DeMilo & Co.* v. *Commissioner of Motor Vehicles*, 233 Conn. 281, 292–93, 659 A.2d 162 (1995). "Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. . . . The doctrine of res judicata . . . applies not only to claims actually made and litigated; see 1 Restatement (Second), Judgments § 27 (1982) (regarding collateral estoppel); but also to claims that a party *could have made* in the initial action." (Emphasis in original; internal quotation marks omitted.) Id. Because P.A. 93-385 did not exist at the time the variance was granted, no claim could have been made under it. Indeed, the statute came into effect only during the pendency of this case.

With respect to the plaintiff's second claim that the trial court improperly declared the 1975 variance void ab initio, this issue is necessarily subsumed within our discussion of P.A. 93-385 and its impact on the case. The trial court found the variance to be void ab initio due to the board's imposition of the condition "for Mrs. Kastner's life use only." Because variances are granted only with respect to a particular piece of property, and not with respect to any one person; *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972); the trial court found the above condition to be unreasonable. The trial court reasoned that the board lacked authority to impose an unreasonable condition and therefore that it had acted without jurisdiction, such that the condition was void ab initio. Further, it found that because the condition was integral to the grant of the variance, the entire variance was void ab initio. Public Act 93-385 addresses precisely this issue.

safety, convenience, welfare and property values solely with respect to a parcel of land where, *owing to conditions especially affecting such parcel* but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in *exceptional difficulty or unusual hardship* . . . ." (Emphasis added.) "A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . Thus, the power to grant a variance should be sparingly exercised. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." (Internal quotation marks omitted.) *Kaeser* v. *Zoning Board of Appeals*, 218 Conn. 438, 445, 589 A.2d 1229 (1991).

Variances cannot be personal in nature, and may be based only upon property conditions. *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972); see T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 124. Thus, the identity of a particular user of the land is "irrelevant to zoning." *Dinan* v. *Board of Zoning Appeals*, 220 Conn. 61, 66–67 n.4, 595 A.2d 864 (1991); see T. Tondro, supra, p. 88 ("zoning power may only be used to regulate the 'use, not the user' of the land"). In fact, we have stated that "[p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." *Garibaldi* v. *Zoning Board of Appeals*, supra, 239–40. "[T]he basic zoning principle that zoning regulations must directly affect land, not the owners of land"; T. Tondro, supra, p. 137; limits the ability of zoning

boards "to act for personal rather than principled reasons," particularly in the context of variances. Id., p. 92.

Violations of the "use, not user" rule occur "most frequently in variance cases where a board of appeals has sought to condition a variance on the applicant's continued ownership of the property." Id., p. 89. In this case, the trial court properly found that the condition limiting the variance to "Mrs. Kastner's life use only" was clearly personal to the applicant. Therefore, because this condition is personal as opposed to property-related, it is invalid.

Furthermore, we have held that if a zoning board would have refused to grant a variance without a particular condition, the condition is an integral part of the variance. *Vaszauskas* v. *Zoning Board of Appeals*, 215 Conn. 58, 66, 574 A.2d 212 (1990). If an integral condition is invalid, then an otherwise valid variance is also invalid. Id. The trial court here determined that the condition was integral to the grant of the variance, and that because the condition was invalid, the variance was likewise invalid. We agree with the trial court that the condition and, therefore, the variance were invalid when granted in 1975.

The issue we must resolve is whether P.A. 93-385, as it amends § 8-6; see footnote 1; should be applied retroactively to save this otherwise invalid variance. Section 8-6 (b) provides: "Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance." The plaintiff argues alternatively that either: (1) both sentences of the act merely clarify

existing law;[5] or (2) although the second sentence may constitute a change in existing law, the legislature clearly intended that the entire act be given retroactive application.[6] On the basis of these arguments, the plaintiff claims that we should determine that the effect of the act is to give any owner of 257 Deepwood Drive the right to year-round occupancy. The board claims that although the first sentence of the act is a codification or clarification of existing law, the second sentence of the act changes existing law and therefore should be applied prospectively only. Although we agree with the board that the second sentence of the act changes existing law, we nevertheless conclude that the act should be applied retroactively.

We begin by examining the first sentence of the P.A. 93-385. In connection with that sentence, as we have stated throughout this opinion, it is well settled that variances run with the land and are not personal in nature. Therefore, "[c]onsistent with prior case law, a statute now states that a variance runs with the land . . . ." R. Fuller, supra, (1995 pocket part) § 9.2. The legislative debate confirms that the legislature was well aware that this court has consistently stated that a vari-

---

[5] The general rule is that when a legislative act is intended to clarify existing law "it necessarily has retroactive effect." *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987).

[6] In *Schaghticoke Indians of Kent, Connecticut, Inc.* v. *Potter*, 217 Conn. 612, 616, 587 A.2d 139 (1991), we noted that "General Statutes § 1-1 (u) provides that [t]he passage or repeal of an act shall not affect any action then pending. We have construed that provision to mean that [s]tatutes should be construed retroactively only when the mandate of the legislature is imperative." (Internal quotation marks omitted.) More recently, we noted that "[i]t is a rule of construction that legislation is to be applied prospectively unless the legislature clearly expresses an intention to the contrary. The rule is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation. . . ." (Internal quotation marks omitted.) *Miller* v. *Kirshner*, 225 Conn. 185, 203, 621 A.2d 1326 (1993).

ance must run with the land and not with the individual property owner. Senator George Jepsen stated that "[w]hat this bill does . . . is to state clearly what I think most people believe is existing law in this area, but because there's been some confusion down in Southern Connecticut, we thought it important to state it with great clarity. What it says is that, what every young lawyer learned in property class, which is that zoning variances run with the property and not with the individual who [obtained] the change. So in other words, if you go before a local Zoning Board, receive a zoning variance, that zoning variance does not expire when you do and it makes it clear that what the Zoning Board intended was that the variance is granted to the land and not to the person." 36 S. Proc., Pt. 5, 1993 Sess., pp. 1507–1508. We agree, therefore, with the plaintiff that the first sentence merely clarifies and codifies existing case law, and has retroactive effect.[7]

In reliance on this legislative history, the plaintiff argues that because the second sentence is also a clarification of existing law, it too has retroactive effect. The board responds, however, that if P.A. 93-385, in its entirety, simply clarifies or codifies existing case law as the plaintiff argues, then its application to this case cannot save this otherwise illegal variance. The board relies on the line of cases wherein we have held that a variance is invalid if any attached condition that is integral to the grant of the variance is itself invalid. See *Vaszauskas* v. *Zoning Board of Appeals*, supra, 215 Conn. 66–67; *Burlington* v. *Jencik*, 168 Conn. 506, 510, 362 A.2d 1338 (1975) ("variance and the attached conditions are inextricably linked, the viability of the variance being contingent upon the satisfaction of the conditions"); *Bora* v. *Zoning Board of Appeals*, 161 Conn. 297, 302, 288 A.2d 89 (1971) (because condition was illegal, in that it exceeded board's authority, variance

---

[7] See footnote 5.

was also illegal and ordered struck down). The board argues that, because the condition "for life use only," which is attached to the 1975 variance, is both invalid and integral to the grant of the variance, the variance itself is invalid and the plaintiff has only seasonal use of the subject premises. We agree with the board that P.A. 93-385 changes the law by providing that a variance will survive despite an invalid and integral condition.

Alternatively, the plaintiff argues that even if we conclude that the second sentence of the act is a departure from existing law, in that it allows an otherwise invalid variance to survive despite an integral and invalid condition, that sentence nevertheless applies retroactively. The board contends that because P.A. 93-385 changes the law, the legislation can be given only prospective application in the absence of a clearly and unequivocally expressed legislative intent to the contrary. *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987); *Moore* v. *McNamara*, 201 Conn. 16, 22, 513 A.2d 660 (1986). We conclude that P.A. 93-385 has retroactive effect.

The plaintiff argues that the plain language of the statute requires that it be given retroactive application. He points particularly to the second sentence, which is written in the past tense: "A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who *initially applied for and received* the variance." (Emphasis added.) General Statutes § 8-6 (b). Relying on our decision in *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 479 A.2d 1191 (1984), the plaintiff claims that the use of the past tense by the legislature is a clear indication that the act is to be applied retroactively.[8]

_____

[8] In *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 194 Conn. 176, we concluded that legislation passed subsequent to the issuance of certain

We have often noted the importance of the use of a particular tense. See, e.g., *Connelly* v. *Doe*, 213 Conn. 66, 72, 566 A.2d 426 (1989); *Everett* v. *Ingraham*, 150 Conn. 153, 156–57, 186 A.2d 798 (1962). The use of the past tense in P.A. 93-385 is evidence of the legislature's intent that the act be applied retroactively. We are more persuaded, however, by other considerations.

The defendant argues that the act is prospective only. This would mean that the legislature created an act to apply only to invalid conditions not yet imposed and illegal variances not yet granted or that the legislature intended for the act to apply only to future transfers of property to which invalid variances had already attached. Neither of these positions makes sense.

First, it is nonsensical to assume that the act would apply only to conditions imposed subsequent to the act's effective date. There can be no doubt that the act applies to a transfer of property occurring the day following the act's effective date. In that instance, any condition attached to that property must have occurred prior to the act's effective date. Moreover, intending the act to apply only to future conditions would presuppose that zoning boards will continue to impose invalid conditions. While it is naive to think that there will be no future invalid conditions imposed following the enact-

wholesale liquor permits was to be applied to those permits currently in effect that met statutory durational requirements. "The language of the act clearly refers to distributorships in existence at the time of its passage. This results from the use of the phrase 'has had,' in subsection (a) (2) of [No. 81-367 of the 1981 Public Acts], which is the present perfect tense of the word 'have.' Words and phrases are to be construed according to the commonly approved usage of the language. General Statutes § 1-1 (a); *Caldor, Inc.* v. *Heffernan*, 183 Conn. 566, 570, 440 A.2d 767 (1981). The use of the present perfect tense of a verb indicates an action or condition that was begun in the past and is still going on or was just completed in the present. Thus, although the act applies prospectively to terminations of distributorships, the criteria upon which such terminations are to be considered might well arise either before or after its effective date." *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 174–75.

ment of the act, it is nonsensical to assume that the legislature passed an act that *presumes* that boards will impose invalid conditions.

It is similarly nonsensical to assume that the legislature intended the act to apply only to future transfers of property. The purpose of the act was to address the situation that materializes when a property owner, to whom a variance subject to an integral and illegal condition was granted, transfers the property. The transfer is what causes the underlying problem to surface. Accordingly, the transfer is only the symptom of the problem; the problem is the invalid condition. Applying the act to transfers that occur only after its enactment focuses on the symptom, but not the underlying problem.

It is more logical to view the legislature as having intended to sever invalid personal conditions from otherwise valid variances whether such condition was in existence at the time of the act's passage or created later. Whether the symptom surfaced before or after the act's passage is immaterial: in either case, the act serves to sever the invalid condition from its associated variance. This view necessarily requires retroactive application of the act to a transfer that had occurred prior to the act's enactment.

An examination of the circumstances of the act's passage, which is an additional aid in determining legislative intent, further supports the conclusion that the act was intended to be retroactive. The progenitor of the act, Irving H. Beck, "had been the beneficiary of a variance [which ran to him personally] that was obtained perhaps twenty years previously *because* the board had thought, mistakenly, that it *could* so condition a variance. Having benefitted from the illegal condition, the proponent of the legislation now wanted to transfer title to the land *including* the benefit of the

variance, which ran to him personally because of the illegal condition." (Emphasis in original.) T. Tondro, supra, (1995 Cum. Sup.) p. 34. The legislature intended that Beck receive the benefit of the variance, which is only possible if the act is given retroactive effect.

Moreover, we note that "absent a contrary legislative directive, it is presumed that if any part of an act applies retroactively, all of it is retroactive." 2 J. Sutherland, Statutory Construction (5th Ed. Singer 1993) § 41.04, p. 352, citing *Matter of Heuermann*, 90 S.D. 312, 321, 240 N.W.2d 603 (1976) ("[I]t is a basic principle of statutory construction that an enactment of the legislature is to be considered as a whole. . . . Thus, if retroactive impact is clearly intended for some of the provisions of the act, it seems logical to assume that the legislature intended retroactive impact for them all.") The legislative history of P.A. 93-385 clearly evinces a legislative understanding that the first sentence merely codifies existing law. As such, that portion of the act is necessarily retroactive. In light of the specific language chosen, as well as the circumstances surrounding the act's passage and the problem the legislature was attempting to address, we are persuaded that the entire act should be given retroactive effect.

Accordingly, we conclude that P.A. 93-385 is to be applied retroactively and that any prospective challenges to variances subject to otherwise invalid, integral conditions must result in the severance of the condition and the survival of the otherwise valid variance. We therefore conclude that the illegal condition of "life use only" is severed from the plaintiff's variance and that his variance survives and runs with the land, such that he is entitled to year-round occupancy of the subject premises.

The judgment is reversed, and the case is remanded to the trial court with direction to render judgment

sustaining the plaintiff's appeal in accordance with this opinion.

In this opinion the other justices concurred.