[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5284-PPPP
STATEMENT OF APPEAL
The plaintiff, Duane Johnson, appeals from a decision of the defendant, the Winchester Zoning Board of Appeals, in which the ZBA denied Johnson's application for a variance from the Winchester zoning regulations.
BACKGROUND
Johnson alleges that he is the owner of premises located on Wakefield Boulevard, Winsted, Connecticut, located in an area designated as the Highland Lake District. (Appeal, dated November 7, 1995, ¶¶ 1, 6). He further alleges that a "small single family dwelling existed thereon until 1993, when plaintiff dismantled and removed most of said dwelling subsequent to a fire having damaged it." (Appeal, ¶ 10).[1]
By application dated October 2, 1995, Johnson submitted a request for a variance from the Winchester zoning regulations to the Winchester Zoning Board of Appeals. (Return of Record [ROR], Item 2-a: Variance Application #2544). Johnson sought a variance from the regulations with respect to the side yard setbacks and the percentage of building coverage in order to construct a single family dwelling. (ROR, Item 2-a). Johnson requested the variance because the "[e]xtreme topography/of subject lot causes hardship to property owner in construction and use of dwelling if required set backs are adhered to." (ROR, Item 2-a).
On October 24, 1995, the ZBA conducted a public hearing on Johnson's application. (ROR, Item 2-d: Zoning Board of Appeal Minutes, dated October 24, 1995; Item 2-e: Transcript of Public Hearing, dated October 24, 1995). Following a discussion of the application, three members of the ZBA voted in favor of the application, and two members opposed it; therefore, the application was denied.[2] (ROR, Item 2-e, p. 8-9; Item 2-d. By Notification of Decision dated October 27, 1995, the ZBA notified Johnson that his variance request "from Section 4a.2 for front yard set-backs (south north sides); 4a.2 for Bldg. % Coverage at 139 W. Wakefield Blvd." was denied because "1. lot [too] small for Highland Lake District" and, "2. no hardship found." (ROR, Item 2-c: Notification of Decision, dated October 27, 1995).[3] Johnson now appeals from the ZBA's denial of variance application #2544.[4]
CT Page 5284-QQQQ
JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board of appeals to the superior court. In order to take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). The statutory provisions are mandatory and jurisdictional in nature, and failure to comply will result in dismissal of an appeal. Id.
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, ___ A.2d ___ (1996). An owner of the subject property is aggrieved and entitled to bring an appeal. WinchesterWoods Associates v. Planning Zoning Commission, 219 Conn. 303,308, 592 A.2d 953 (1991).
In the present case Johnson alleges that he applied for certain variances "to allow the construction of a new single family dwelling on premises owned by the plaintiff located on Wakefield Boulevard, Winsted, Connecticut." (Appeal, ¶ 1). He further alleges that "[s]aid parcel of land has been owned by the plaintiff since 1982. . . ." (Appeal, ¶ 10). Therefore, Johnson has pleaded aggrievement, and since the parties have filed a written stipulation dated July 26, 1996 that the plaintiff is "an aggrieved person . . . inasmuch as the plaintiff is the owner of the premises which are the subject of the instant appeal," the court finds the plaintiff is aggrieved and as such has standing to maintain the instant appeal.
Timeliness and Service of Process
General Statutes 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."
Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the CT Page 5284-RRRR usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Johnson alleges that "[b]y `Notification of Decision' dated October 26, 1995 the defendant Board announced its decision by publication in the Register-Citizen on October 31, 1995." (Appeal, ¶ 4). On November 9, 1995, this appeal was commenced by service of process on the town clerk of Winsted and upon the chairman of the zoning board of appeals.
The ZBA submitted a clipping from a newspaper with a handwritten notation indicating "R/C 10/31/95." The clipping is entitled "Legal Notice Town of Winchester Zoning Board of Appeals Notification of Decision," and it sets forth the ZBA's decision concerning Johnson's variance application.
The court finds that October 31, 1995 was the date of publication of the decision, and, therefore, this appeal was commenced in a timely fashion by service of process upon the proper parties.
SCOPE OF REVIEW
"The standard of review on appeal from a zoning board's decision to grant or deny a variance is well established." Bloomv. Zoning Board of Appeals, 233 Conn. 198, 205, 658 A.2d 559
(1995). The trial court must determine whether the board's action was "arbitrary, illegal or an abuse of discretion." Id., 205-06.
"Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing[.]" (Internal quotation marks omitted.) Bloomv. Zoning Board of Appeals, supra, 233 Conn. 206. "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Id. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Id.
DISCUSSION
"Variances are, in a sense, the antithesis of zoning." (Internal quotation marks omitted.) Simko v. Ervin, 234 Conn. 498, CT Page 5284-SSSS 505, 661 A.2d 1018 (1995). "A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . ." (Internal quotation marks omitted.). Reid v.Zoning Board of Appeals, 235 Conn. 850, 857, 670 A.2d 1271 (1996).
"Our law governing variances is well settled. Section 8-6
(a)(3) provides in relevant part that a zoning board of appeals may `determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditionsespecially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptionaldifficulty or unusual hardship. . . .'" (Emphasis in original.)Reid v. Zoning Board of Appeals, supra, 235 Conn. 856-57, quoting General Statutes § 8-6 (a)(3).
General Statutes § 8-6 is interpreted as authorizing "a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra, 233 Conn. 207.
A zoning board of appeals "is endowed with a liberal discretion." Francini v. Zoning Board of Appeals, 228 Conn. 785,791, 639 A.2d 519 (1994). The board's actions are reviewed by the court "only to determine whether [they were] unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." (Internal quotation marks omitted.) Id.
Johnson had submitted the present variance application (application #2544), after his previous application (application #2540), had been "[d]enied without prejudice and if resubmitted within 90 days with significant changes, fee waived[.]" (ROR, Item 1-c). The only difference between the two applications was that CT Page 5284-TTTT the earlier application had requested a front yard setback in addition to the side yard and building coverage variances. (ROR, Item 1-a; Item 2-a; Item 2-e, p. 1). The original papers acted upon by the board with respect to both applications are incorporated in the return of record in this appeal.
With respect to the subject application, the ZBA notified Johnson that it denied his application because "1. lot [too] small for Highland Lake District" and, "2. no hardship found." (ROR, Item 2-c). "Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [decision] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." Bloom v. Zoning Board of Appeals, supra,233 Conn. 208.
In the present case, the ZBA "tersely declared only" that it denied Johnson's application because the lot was too small and because there was no hardship. Therefore, this court must search the record to find a basis for the ZBA's decision. Grillo v.Zoning Board of Appeals, 206 Conn. 362, 369, 537 A.2d 1030 (1988) (board's terse declaration that "hardship was shown" required the trial court to search the record to find a basis for the action taken). If the court finds that the reasons given by the ZBA for denying the variance are unsupported, it is "warranted in concluding that the action of the board in denying that variance was arbitrary, illegal and in abuse of its discretion." ChevronOil Co. v. Zoning Board of Appeals, 170 Conn. 146, 153,365 A.2d 387 (1976).
The court finds that the record supports the ZBA's denial of Johnson's variance application on the ground that Johnson did not establish a hardship.
Section 13.3 of the Winchester zoning regulations delineates the powers and duties of the ZBA. Section 13.3.3 provides that the ZBA shall "determine and vary the application of provisions of these regulations in harmony with their general purpose and intent, and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land, where, owing to conditionsCT Page 5284-UUUUespecially affecting such parcel but not affecting generally thedistrict in which it is situated, a literal enforcement of these regulations would result in exceptional difficulty or unusualhardship, so that justice will be done, and the public safety and welfare preserved." (Emphasis provided.) (ROR, Item 4: Winchester Zoning Regulations, pp. 95-96).
Johnson alleges that "[t]he topography of the subject lot is quite severe and the buildable area of the lot is at an elevation some 20 to 30 feet higher than the roadway." (Appeal, ¶ 8). His variance application stated that the nature of his hardship was "[e]xtreme topography/and dimensions of subject lot causes hardship to property owner in construction and use of dwelling if required set backs are adhered to." (ROR, Item 2-a). The application, and accompanying maps, reveal that Johnson's parcel is long and narrow. The application provides that the dimensions of property with respect to the frontage is 50.50 feet, and with respect to the depth is "208.22 212.76'4." (ROR, Item 2-a; Item 3: Class `D' Survey prepared for Duane Johnson).[5]
At the public hearing, Johnson explained that "as we already discussed here as far as the drive down front you are talking almost a 150 feet walk up to the house. There is no possible drive there, that is the basic hardship there to put the house as close as possible to the roadway." (ROR, Item 2-e, p. 5). After the public hearing was closed, Paul Grigg, a member of the ZBA, observed that "[j]ust a point to note that we have granted variances based on topography of the land as being a hardship point in the past. Very similar to this." (ROR, Item 2-e, p. 5). Later, an unidentified ZBA member remarked that "[c]entering his house on the lot and bringing it a little bit closer to the street, his hardship is that it is a long distance from the house plus its nonconforming on the old one. He is coming before us and saying this is what I would like to do and we need to take everything under consideration today[.]" (ROR, Item 2-e, p. 8). Ultimately, three members of the ZBA voted in favor of the application, and two members opposed it; therefore, the application was denied. (ROR, Item 2-e, p. 9).
"The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . Thus, the power to grant a variance should be sparingly exercised. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual CT Page 5284-VVVV hardship, as opposed to the general impact which the regulation has on other properties in the zone." (Internal quotation marks omitted.) Reid v. Zoning Board of Appeals, supra, 235 Conn. 857. "Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." Bloom v. Zoning Board of Appeals, supra, 233 Conn. 207-08.
"A hardship resulting from the peculiar topography or condition of the land or a particular location which makes the property unsuitable for the use permitted in the zone in which it lies may well be such a hardship. . . ." Plumb v. Board of ZoningAppeals, 141 Conn. 595, 600, 108 A.2d 899 (1954). "Limitations imposed by the shape of the lot do not in themselves create a hardship, however. They must, in conjunction with the regulations, prevent the owner from doing something the owner otherwise has a right to do. An owner has a right to beneficially use [his] land, for example, but [he] does not have a right to undertake the most beneficial use of [his] land." (Emphasis in original). T. Tondro, Connecticut Land Use Regulation (2d Ed. 1995 Sup., pp. 36-37. In addition, "the hardship must differ from the conditions that generally affect the property owners in the same area, and it must arise from circumstances beyond the control of the property owner seeking the variance." Bloom v. Zoning Board of Appeals, supra,233 Conn. 209.
The Winchester zoning regulations provide that both single family dwellings and seasonal cottages are permitted uses in the Highland Lake District;[6] (ROR, Item 4, §§ 4a.1.1, 4a.1.1.1); and the record reflects that the ZBA previously granted variances to Johnson to rebuild the dwelling on its original footprint, which would have rendered the property suitable for a permitted use in the district. (ROR, Item 2-a, Attachment: Variance Certification dated October 27, 1992; Item 1-a, Attachment: Variance Certification dated March 24, 1992) One of the ZBA members observed that "I think that [Johnson] was living there before and he had two previous variances so he uses the three previous variances and he constructs on his old footprints and still . . . going to live there." (Omissions in original). (ROR, Item 2-e: comments of ZBA member, Frank Smith, p. 6).
Although Johnson sought the variance because of hardship due to "[e]xtreme topography/and dimensions of [the] subject lot," he made no showing that the topography or dimensions of his parcel created an unusual hardship that differed from conditions that generally affected other property owners in the same area, i.e., CT Page 5284-WWWW within the Highland Lake District.[7] In addition, the record reveals that the ZBA previously had granted several variances to Johnson to allow him to rebuild upon the original footprint of the dwelling, which would have allowed him the right to beneficially use his parcel. Accordingly, the court finds that the record reasonably supports the ZBA's finding of no unusual hardship or exceptional difficulty, and that Johnson has not met his burden of demonstrating that the ZBA acted improperly.
The ZBA also determined that Johnson's variance should be denied because the lot was too small for the Highland Lake District. The court finds that the record supports this ground, as well.
General Statutes § 8-6 allows a zoning board of appeals to grant a variance when it is "shown not to affect substantially the comprehensive zoning plan. . . ." Bloom v. Zoning Board ofAppeals, supra, 233 Conn. 207. The ZBA maintains that Winchester has not adopted a comprehensive zoning plan. (Defendant's Brief, p. 10). The comprehensive plan, however, may be found within the scheme of the actual zoning regulations. Adolphson v. Zoning Boardof Appeals, 205 Conn. 703, 713, 535 A.2d 799 (1988). "The comprehensive plan is a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the properties. The comprehensive plan usually consists of the zoning regulations themselves and the zoning map which has been established pursuant to those regulations in the absence of a formally adopted comprehensive plan." (Footnote omitted.) R. Fuller, 9 Connecticut Practice Series, Land Use Law and Practice (1993), § 4.3, p. 46.
Section 3.0.1 of the Winchester Zoning Regulations sets forth the purposes of the regulations. This section provides, in pertinent part, that the regulations were adopted "(a) To promote and to protect the public health, safety, and welfare of the inhabitants of the Town of Winchester . . . and of the public generally"; "(c) To encourage the most appropriate use of land throughout the Town, thereby conserving the value of properties"; "(d) To regulate the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts, and other open spaces; and the height, size, character and location of signs"; "(e) To regulate the density of population and the location and use of buildings, structures and land for trade, CT Page 5284-XXXX industry, residence, or other purposes"; "(k) To provide adequate light and air"; "(l) To prevent the overcrowding of land and avoid undue concentration of population"; "(q) To encourage development of housing opportunities for all citizens of the Town consistent with soil types, terrain and infrastructure capacity;" (ROR, Item 4, § 3.0.1, pp. 8-9).
Section 10 of the Winchester zoning regulations governs non-conformity, and the Return of Record contains amendments to this section, amended and adopted on July 24, 1995 and effective August 8, 1995. (ROR, Item 4: Attachment). The expressed intent of the regulations is to allow "non-conformities to continue until they are removed, but not to encourage their survival[,]" and "[t]o prohibit the enlargement, expansion, or extension of non-conformities, if such a change would increase the non-conformity. . . ." (ROR, Item 4: Attachment, §§ 10.1(1)., 10.1(2).
Johnson's property is located in the Highland Lake District; (ROR, Item 2-a); which is governed by § 4a of the Winchester zoning regulations. (ROR, Item 4: Town of Winchester Zoning Regulations). Section 4a.2 of the regulations, which sets forth the required minimum dimensions, provides the following:
 Minimum lot area: 40,000 sq. ft. Minimum lot width: 150 feet Front yard: 50 feet Each side yard: 35 feet Rear yard: 35 feet Percentage of building and driveway coverage: 15%
(ROR, Item 4, § 4a.2, p. 29).
Johnson's property consists of 10,515 square feet, and he sought to increase the size of the proposed structure from 937.50 square feet to 1,144 square feet. (ROR, Item 2-a). In addition, he requested a variance of 27 and 23 feet for the south side yard, 24.7 and 22.7 for the north side yard, and a variance for building coverage of 157 square feet. (ROR, Item 2-a).
At the public hearing conducted on the application, the record reveals that there was discussion concerning the size, and degree of nonconformity, of Johnson's lot with respect to the requested variances. (ROR, Item 2-e). CT Page 5284-YYYY
At the hearing, Mark Jones, Johnson's attorney, stated that "[b]asically the proposal in our opinion makes this property more conforming than what currently exists. The sideyard[s] before were extremely minimal at least on one side and you can see it was pushed back on one side and the proposal we have now brings it to the center of the lot, although it doesn't bring it into compliance we think it brings it into more compliance than had been existing." (ROR, Item 2-e, p. 2). He added that "[t]he structure which had been there was also undersized it didn't meet the minimum square footage requirements for a dwelling but this house does." (ROR, Item 2-e, p. 2). One of the members of the ZBA, Paul Grigg, agreed that "[i]t seems you are making it more, more conforming." (ROR, Item 2-e, p. 5) Another member, Frank Smith, however, voiced concern that "in all fairness to both property owners on either side . . . . the lot again is an extremely small lot and that is what I don't like about it and I would suggest that he build on the original foot print that he used for the two previous variances." (ROR, Item 2-e, p. 4).[8]
After the public hearing was closed, the members discussed the application further. (ROR, Item 2-e, p. 5). Smith again expressed concern that the lot was too small; (ROR, Item 2-e, p. 5); and another member, Rose Lagueux, commented that "if it was the same footprint but here again he is putting up something that is undersized so he is putting back that is nonconforming in an extra way." (ROR, Item 2-e, p. 7). An unidentified ZBA member inquired "Would you like to live in 900 square feet? He is asking to bring this more into alignment given an extra couple hundred square feet and for the purpose of . . . . and that looks more reasonable to the proposed new area knowing that given the . . . . smaller house on the old footprint . . . ." (Omissions in original.) (ROR, Item 2-e) Lagueux then agreed that "to me this is making it a little less nonconforming than one previous was." (ROR, Item 2-e, p. 8).
Despite the contention of Johnson's attorney that the requested variances would make the "property more conforming," the two members who voted to deny the variance application could have found that the requested variances for the sideyards and building coverage would increase the nonconformity with respect to the sideyards and the percentage of building coverage, and that such an increase was in derogation of the comprehensive zoning plan, particularly as embodied in § 3 and § 10 of the zoning regulations. CT Page 5284-ZZZZ
Accordingly, for the reasons set forth above, the court dismisses Johnson's appeal.
HON. RICHARD A. WALSH, J.