[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
STATEMENT OF APPEAL
The plaintiff, Herbert Nyberg, appeals from a decision of the defendant, the Norwich Zoning Board of Appeals, in which the ZBA denied Nyberg's application for a variance from the Norwich zoning regulations.
BACKGROUND
Nyberg alleges that he entered into an agreement to purchase a parcel of land located at 50 60 Salem Turnpike, Norwich, Connecticut. (Appeal, ¶ 5). He further alleges that the parcel is zoned R-10 and R0 and contains approximately seventy percent (70%) of inland-wetlands. (Appeal, ¶ 2). According to Nyberg, the parcel of land is located within a designated flood plain area which results in severe limitations on the type of development that can occur on the land. (Appeal, ¶ 3). CT Page 4991
By application dated January 23, 1997, Nyberg submitted a request for a variance from the Norwich zoning regulations to the Norwich Zoning Board of Appeals. (Return of Record [ROR], Item 2, #A: Variance Application #V-97-5). Nyberg sought a use variance of §§ 8.4.1 and 8.2.1 of the Norwich zoning regulations in order to construct a car wash facility on the premises. (ROR, Item 2). Nyberg requested the variance because the "area presently has great commercial activity and it is unlikely this property would be used for residential activity[,]" and "[b]eing in [the] flood zone severely limits residential use [of the property]" and "this [car wash] facility results in minimal impact on [the] flood zone." (ROR, Item 2).
On February 11, 1997, the ZBA conducted a public hearing on Nyberg's application. (ROR, Item 23, #U: Zoning Board of Appeals Minutes, dated February 11, 1997; Transcript of Public Hearing, dated February 11, 1997). The public hearing was continued to March 11, 1997. (ROR, Item 24, #V: Zoning Board of Appeals Minutes, dated March 11, 1997; Transcript of Public Hearing, dated March 11, 1997). Following a discussion of the application, one member of the ZBA voted in favor of the application and four members opposed it; therefore the application was denied.[1]
(ROR, Item 24, pp. 8-9). Notification of the ZBA's decision was published in the Norwich Bulletin on March 14, 1997. (Appeal, ¶ 13). Nyberg now appeals from the ZBA's denial of variance application # V-97-5.[2]
 JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of zoning board of appeals to the superior court. In order to take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a right. Bridgeport Bowl-O-Rama, Inc. v. Zoning Board ofAppeals, 195 Conn. 276, 283, 487 A.2d 559 (1985). The statutory provisions are mandatory and jurisdictional in nature, and failure to comply will result in dismissal of an appeal. Id.
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). The holder of a contract or CT Page 4992 an option to purchase property has a sufficient legal interest to establish aggrievement. See Shapero v. Zoning Board,192 Conn. 367, 376, 472 A.2d 345 (1984) (contract purchaser has sufficient property interest to maintain standing to apply for special exception or zoning variance.).
In the present case, Nyberg alleges that he entered into a purchase and sale agreement with the owner of the subject property, Charles Tillery. Nyberg alleges that, by virtue of this agreement, he has a specific property interest in the premises and that this property interest has been injuriously affected by virtue of the denial of the variance application. (Appeal, ¶ 12). Therefore, Nyberg has pleaded aggrievement. Further, a copy of the purchase and sale agreement is included in the return of record. (Plaintiff's Exhibit #1). It is submitted, therefore, that Nyberg has properly pleaded and proven aggrievement. See, e.g., State Library v. Freedom of InformationCommission, 240 Conn. 824, 694 A.2d 1235 (1997).
Timeliness and Service of Process
General Statutes § 8-8 (b) provides, in relevant part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."
Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Nyberg alleges that "[n]otice of the defendant [Zoning] Board's decision was duly published in the Norwich Bulletin on March 14, 1997." (Appeal, ¶ 13). On March 28, 1997, this appeal was commenced by service of process on the town clerk of Norwich and upon the chairman of the zoning board of appeals. The return of record does not contain an affidavit of publication, nor a copy of the published notice. However, this court finds that March 14, 1997 is the date of publication of the ZBA's decision, and that this appeal was commenced in a timely fashion by service of process upon the proper parties.
SCOPE OF REVIEW
CT Page 4993
"The standard of review on appeal from a zoning board's decision to grant or deny a variance is well established." Bloomv. Zoning Board of Appeals, 233 Conn. 198, 205, 658 A.2d 559
(1995). The trial court must determine whether the board's action was "arbitrary, illegal or an abuse of discretion." Id., 205-06.
"Courts are not to substitute their judgment for that of the board. . . ." (Internal quotation marks omitted.) Bloom v. ZoningBoard of Appeals, supra, 233 Conn. 206. "[D]ecisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . ." (Internal quotation marks omitted.) Id. "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Id. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Id.
DISCUSSION
Variances are, in a sense, "the antithesis of zoning." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 124. "A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . ." (Internal quotation marks omitted.) Reid v. Zoning Board of Appeals,235 Conn. 850, 857, 670 A.2d 1271 (1996).
"Our law governing variances is well settled. Section 8-6
(a)(3) provides, in relevant part, that a zoning board of appeals may determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship. . . ."' (Emphasis omitted.) Reid v.Zoning Board of Appeals, supra, 235 Conn. 856-57, quoting General Statutes § 8-6 (a)(3).
General Statutes § 8-6 is interpreted as authorizing "a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to CT Page 4994 affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) Bloom v. Zoning Board, supra, 233 Conn. 207.
A zoning board of appeals "is endowed with a liberal discretion. . . ." (Internal quotation marks omitted.) Francini v.Zoning Board of Appeals, 228 Conn. 785, 791, 639 A.2d 519 (1994). The court reviews the board's actions "only to determine whether [they were] unreasonable, arbitrary or illegal. . . ." (Internal quotation marks omitted.) Id. "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . ." (Internal quotation marks omitted.) Id. "In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." (Internal quotation marks omitted.) Id.
As previously stated, Nyberg sought a use variance of §§ 8.4.1 and 8.2.1 of the Norwich zoning regulations. These sections govern residence-office districts and residence districts, respectively. The record of the ZBA's decision to deny Nyberg's application indicates that individual board members voted against the application because "RO development would be more in keeping with what is there" and "a car wash has the potential for a significant impact on traffic. . . hazards will be created. . . the potential for accidents is [also] greatly increased." (ROR, Item 24, #V: Zoning Board of Appeals Minutes, dated March 11, 1997).
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . ." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals,
supra, 233 Conn. 208. "The [decision] must be sustained if even one of the stated reasons is sufficient to support it. . . ." (Internal quotation marks omitted.) Id. "[This] applies where the agency has rendered a formal, official, collective statement of reasons for its action. . . . Where a zoning board of appeals does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the board's decision." (Citations omitted; internal quotation marks omitted.) CT Page 4995 Id.
If this court finds that the reasons given by the ZBA for denying the variance are unsupported by the record, it is "warranted in concluding that the action of the board in denying that variance was arbitrary, illegal and in abuse of its discretion." Chevron Oil Co. v. Zoning Board of Appeals,170 Conn. 146, 153, 365 A.2d 387 (1976). In the present case, because the ZBA did not formally state the reasons for its decision, this court must search the record for a basis for the ZBA's decision.
Section 19.1 of the Norwich zoning regulations enumerates the power and duties of the ZBA, and § 19.1.3 sets out the regulatory provisions relating to variances. Section 19.1.3 states "[t]o vary the strict application of any of the requirements of this ordinance in the case of an exceptionally irregular, narrow, shallow, or steep lot or other physical conditions for which strict application would result in exceptional difficulty or unusual hardship that would deprive the owner of the reasonable use of the land or building involved, but in no other cases. No variance in the strict application of any provision of this ordinance shall be granted by the zoning board of appeals unless it finds: (a) [t]hat there are special circumstances or conditions fully described in the findings of the board, applying to the land or buildings for which the variance is sought, which circumstances or conditions are peculiar to such land or building, and do not apply generally to land or buildings in the neighborhood, and have not resulted from any act subsequent to the adoption of these regulations, whether in violation of the provisions hereof or not; and (b) [t]hat for reasons fully set forth in the findings of the board, the aforesaid circumstances or conditions are such that the strict application of the provision of this ordinance would deprive the applicant of the reasonable use of such land or building and the granting of the variance is necessary for the reasonable use of the land or building, and that the variance as granted by the board is the minimum variance that will accomplish this purpose; and (c) [t]hat the granting of the variance will be in harmony with the purposes and intent of these regulations, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare."
Nyberg indicated on his variance application that the "area presently has great commercial activity and it is unlikely this property would be used for residential activity." (ROR, Item 2, CT Page 4996 #A). Nyberg's application further indicated that "[b]eing in [the] flood zone severely limits residential use [and] [t]his [car wash] facility results in minimal impact on [the] flood zone." (ROR, Item 2, #A). The application and accompanying maps reveal that the subject parcel is zoned R-10 (a residence district), and RO (a residence-office district).
At the February 11, 1997 public hearing, Nyberg explained that the "location is on a busy street and the street has been improved to four lanes to add commercial business." (ROR, Item 1: Transcript of February and March 1997 Public Hearings, p. 3). Nyberg also commented that "it's not likely that it will be developed for residential use due to the proximity to the highway and the nature of the neighborhood." (ROR, Item 1, p. 3). Following Nyberg's explanation of the type of facility he would construct, Elizabeth Dougherty, Vice-Chairman of the ZBA, raised concerns about the effect on traffic in the area. Specifically, Dougherty remarked that traffic coming out of the city toward the turnpike would have to cross over lanes to get [to the proposed car wash] and that it is "a very congested area even now." (ROR, Item 1, p. 5). In addition, various area residents spoke in opposition at the public hearing, voicing concerns regarding noise pollution from the proposed car wash facility, the already existent traffic problems in the area, and safety issues concerning the children residing in the neighborhood. (ROR, Item 1). A petition from "owners of property adjoining" the proposed facility was also presented to the ZBA at the hearing. (ROR, Item 1, p. 11).
When the public hearing resumed on March 11, 1997, Dougherty asked Nyberg how many cars he thought could enter the facility before the cars would start to back up into the main highway. (ROR, Item 1, p. 24). In response, Nyberg remarked that "there's as much possible stacking [of cars on the facility] at this location as you would get at any car wash." (ROR, Item 1, p. 24). Nyberg also represented "that the acoustic noise that would be generated from the operation of the car wash is minimal." (ROR, Item 1., p. 22). With respect to Nyberg's noise measurements, Robert Rubega, an area resident and employee of the Naval Undersea Warfare Center involved with providing sonar for ships, commented that "when you make measurements it's very environmentally dependant [sic]." He observed that "when you have a directional source such as a speaker if you were to stand behind a speaker as compared to in front of it, the noise is significantly different, such as car speakers and stuff. So CT Page 4997 acoustic propagation is frequency dependant [sic]. Low, low frequency sound travels much farther than high frequency sound. . . . I just wanted to make those clarifying issues in terms of noise. It's not as clear cut as it was presented." (ROR, Item 1, p. 32). A member of the ZBA, Arthur Sharron, then asked Rubega if "there might be other kinds of noises that would come from this facility, other than the vacuum cleaner motor, " such as car speakers. (ROR, Item 1., p. 32). Rubega commented that "yes. . . you get people driving by. . . and my windows are vibrating because the [stereo] base is so high." (ROR, Item 1, p. 32).
The record further contains a "Referral" memorandum, dated February 19, 1997, from Ralph Page, Chairman of the Commission on the City Plan, directed to the Zoning Board of Appeals. (ROR, Item 11, #J). The memorandum states that the Commission reviewed Nyberg's application and "unanimously voted to forward a recommendation against the subject variance" because "1) [t]he applicant has not proven that there is a unique hardship denying reasonable use of the land. 2) [t]he subject property is not suitable for the proposed development. It is located on Route 82, which is an extremely busy road, and the Commission was concerned with additional traffic problems[,] [and] 3) [t]he Commission was of the opinion that the subject property abutted Residential Office and Residential districts and such a use would be inconsistent with such area." (ROR, Item 11, #J). Conversely, however, the Norwich Community Development Corporation, Inc., "which is dedicated to the increase of jobs and the tax base of our community, " wrote to the ZBA to support the variance application. (ROR, Item 16, #O).
"The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements." (Internal quotation marks omitted). Reid v. ZoningBoard of Appeals, supra, 235 Conn. 857. "Thus, the power to grant a variance should be sparingly exercised." (Internal quotation marks omitted.) Id. "An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." (Internal quotation marks omitted.) Id. "Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." Bloom v. Zoning Board of Appeals, supra, 233 Conn. 207-08. CT Page 4998
"A hardship resulting from the peculiar topography or condition of the land or a particular location which makes the property unsuitable for the use permitted in the zone in which it lies may well be such a hardship as is contemplated by the ordinance. The requirement that the hardship be unnecessary is closely allied to the second essential condition, that the granting of the variance shall be in harmony with the general purposes of the zoning regulations and shall work substantial justice. If the use to be permitted by the variance is such that it runs counter to the fundamental principles of zoning, then the hardship resulting from the strict application of the ordinance is one which must be borne. It is a necessary hardship. " (Citations omitted; internal quotation marks omitted). Plumb v.Board of Zoning Appeals, 141 Conn. 595, 601, 108 A.2d 899 (1954).
The Norwich zoning regulations provide that the buildings and uses permitted in RO (residence-office) districts are those permitted in multifamily districts as contained in § 8.3.1. Section 8.3.1 permits two family dwellings, certain boarding and rooming houses, garden apartments, townhouses and residential group buildings complying with the express conditions of chapter 17, and buildings permitted in R-10, R-25, and R-17.5 residence districts. The subject parcel also falls within an R-10 residence district which, pursuant to section 8.2.1, permits single family dwellings, customary home occupations (including professional offices), and public utility stations and buildings.
Nyberg sought the variance on the grounds that the subject area had great commercial activity and it was "unlikely" that the property would be used for residential activity, and because its location in a flood zone would severely limit residential use, and the car wash facility would minimally impact the flood zone. (ROR, Item 2, #A). Nyberg made no showing, however, that the condition or location of the land created an unusual hardship that differed from conditions that generally affected other property owners in the same area. Accordingly, the court finds that the record supports the ZBA's denial of Nyberg's variance application because the record does not support a finding of unusual hardship or exceptional difficulty, and that Nyberg has not met his burden of demonstrating that the ZBA acted improperly.
In addition, the record would not have supported a finding that any of the other provisions of § 19.1.3 had been met. For example, that granting the variance was "necessary for the CT Page 4999 reasonable use of the land or building"; (§ 19.1.3(b)); or that the granting of the variance would "not be injurious to the neighborhood or otherwise detrimental to the public welfare. . . ." (§ 19.1 .3(c)). As discussed above, the record reflects that Nyberg and the ZBA debated the effect that a car wash facility would have on traffic and noise in the area. Nyberg submitted no evidence that would support a finding by the ZBA that the traffic and noise would not be injurious to the neighborhood. Accordingly, the requisite elements for granting a variance under § 19.3.1 of the Norwich zoning regulations have not been met.
Accordingly, for the reasons set forth above, the court does dismiss Nyberg's appeal.
Turner, J.