NORMAN F. WNUK ET AL. *v.* ZONING BOARD OF
APPEALS OF THE CITY OF NEW BRITAIN ET AL.
(14482)

THE STANLEY WORKS ET AL. *v.* ZONING BOARD OF
APPEALS OF THE CITY OF NEW BRITAIN ET AL.
(14484)

CALLAHAN, BERDON, NORCOTT, KATZ and F. X. HENNESSY, Js.

Argued December 4, 1992—decision released June 8, 1993

*David K. Jaffe,* with whom was *Stephen J. Anderson,* for the appellants (plaintiffs in Docket No. 14482).

*Elliott B. Pollack,* with whom were *Gregory F. Servodidio* and, on the brief, *Austin J. McGuigan,* for the appellants (plaintiffs in Docket No. 14484).

*Howard H. Belkin,* with whom, on the brief, was *Peter C. Mlynarczyk,* for the appellee in both appeals (named defendant in both cases).

*Charles G. Karanian,* with whom, on the brief, was *Stacy A. Welch,* for the appellee in both appeals (defendant West Main Street Associates).

BERDON, J. The principal issue in these appeals is whether a zoning board of appeals must decide an applicant's appeal from the decision of a zoning enforcement officer denying a building permit before it can act on the applicant's request for a variance. These appeals arise from a decision of the defendant New Britain zoning board of appeals (board) granting the defendant West Main Street Associates (West Main) a variance from certain parking space requirements. The plaintiffs[1] appealed the decision of the board to the Superior Court pursuant to General Statutes § 8-8 (b). The trial court, *Goldberg, J.,* upheld the board's grant of the variance.[2] The plaintiffs filed petitions for certification that were granted by the Appellate Court.[3] The Appellate Court then consolidated the appeals, and

[1] There are five plaintiffs in these consolidated appeals. Norman F. Wnuk, the common council of the city of New Britain, and the building commission of the city of New Britain are the plaintiffs in the first appeal (Docket No. 14482). Two abutting landowners, The Stanley Works and American Savings Bank, are the plaintiffs in the second appeal (Docket No. 14484). These two groups of plaintiffs appealed separately to the Superior Court.

[2] The trial court consolidated the two appeals and issued a joint memorandum of decision dismissing them both.

[3] General Statutes § 8-8 (o) provides in relevant part: "There shall be no right to further review except to the appellate court by certification for review . . . ."

we transferred the consolidated appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

West Main is the owner of a building located at 667-677 West Main Street in New Britain. At all times relevant to these appeals, the building was leased in part to an entertainment center called The Sting and a cafe called Molly Malone's Pub. In July, 1990, West Main agreed to lease the remaining space in its building to the American Totalisator Company for use as an off-track betting (OTB) parlor.

In October, 1990, West Main applied for a permit to establish an OTB parlor. The plaintiff Norman F. Wnuk, zoning enforcement officer for the city of New Britain, determined that the off-street parking available at West Main's building would be insufficient under §§ 240-10 and 240-30[4] of the New Britain zoning ordinances (1966), as amended, if an OTB parlor were authorized as an additional use. Specifically, Wnuk determined that 320 on-site parking spaces would be required for the building—200 for The Sting, twenty for Molly Malone's Pub and 100 for the OTB parlor.[5]

---

[4] Subsection 20 of § 240-10 of the New Britain zoning ordinances (1966), as amended, provides that if there are multiple uses on a property, then the off-street parking space requirements for that property "shall be determined by establishing the requirements for each component use from the schedule of such requirements which is a part of this Section, and adding them together." Section 240-30 provides the schedule of off-street parking space requirements for a number of specific nonresidential uses. Subsection 40 of § 240-10 provides that if a use is not specifically listed in the schedule, then "the requirement shall be the same as for the most similar listed use."

[5] Wnuk classified both The Sting (800 person capacity) and Molly Malone's Pub (80 seats) as a restaurant or club, which must provide one space per four permanent seats or the floor area equivalent. He classified the OTB parlor as an auditorium, theater "or other place of public assembly not otherwise classified," which must provide one space for each eight permanent seats or the floor area equivalent. New Britain Zoning Ordinances § 240-30 (1966), as amended. Since the OTB parlor had not yet been constructed, Wnuk

West Main represented to Wnuk that it could provide only 199 spaces. Wnuk suggested that West Main petition the board for a variance from the parking space requirements.

On April 15, 1991, West Main submitted an application to the board. The application stated that West Main was both appealing Wnuk's decision not to issue a building permit and seeking a variance from § 240-10-20.[6] The board held a hearing on the application on May 28, 1991. West Main challenged Wnuk's calculation of the parking requirements at the hearing, but concedes that it did not otherwise prosecute the appeal. Following the hearing, the board voted five to two to grant West Main a variance from the parking space requirements of § 240-10-20. The board did not furnish any grounds for its decision to grant a variance and never voted on West Main's appeal from Wnuk's decision not to issue the building permit because of inadequate parking.

The plaintiffs appealed from the granting of the variance to the Superior Court. They contended that the variance should be overturned because it was not justified by any unusual hardship. Because the board did

decided that 1800 square feet of the facility would be dedicated to public use and divided this square footage by the amount of space needed for a single seat. This yielded a seating capacity of 800 people, and an on-site parking requirement of 100 spaces for the OTB parlor.

[6] General Statutes § 8-6 provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship . . . ."

not state the reasons why it granted the variance, the trial court searched the record to find a basis for sustaining the variance. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 544, 600 A.2d 757 (1991); *Gagnon* v. *Inland Wetlands & Watercourses Commission,* 213 Conn. 604, 607–608, 569 A.2d 1094 (1990); *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 144, 215 A.2d 104 (1965). The court determined that "the basis for the claim of hardship was the lack of specificity in the zoning regulations concerning the classification of the uses at issue and the arbitrary classification of these uses by the zoning enforcement officer." The trial court upheld the variance on this basis.

On appeal to this court, the plaintiffs make two principal arguments for overturning the variance: (1) the board's failure to decide West Main's appeal before granting a variance violated General Statutes § 8-6a; and (2) neither the alleged arbitrariness of the zoning officer's decision, nor the purported uncertainty of the ordinances, constituted the undue hardship necessary to support a variance. Because we find these issues dispositive, we do not consider the plaintiffs' other arguments.[7]

Local zoning boards are vested with a liberal discretion. *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals,* 218 Conn. 265, 269, 588 A.2d 1372 (1991). A trial court must, however, review the

---

[7] Specifically, we do not reach the plaintiffs' claims that West Main did not exhaust its administrative remedies, and that the trial court improperly heard additional testimony and substituted its own reasons for those of the defendant zoning board of appeals. The plaintiffs also argue that the trial court improperly allowed West Main to raise the alleged arbitrariness of Wnuk's actions and the purported uncertainty of the ordinances as special defenses to the appeal below. In light of our holding that neither the alleged arbitrariness of Wnuk's actions nor the purported uncertainty of the ordinances could constitute undue hardship, these special defenses were legally insufficient.

decision of a zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably. Id. We hold that, because the board acted illegally, it was improper for the trial court to uphold the variance.

General Statutes § 8-6a provides: "Whenever an application to a zoning board of appeals for the grant of a variance is joined with an appeal from any order, requirement or decision made by the official charged with the enforcement of this chapter, or any bylaw, ordinance or regulation adopted under the provisions of this chapter, the board *shall* first decide the issues presented by such appeal." (Emphasis added.) The language of the statute mandates that where an applicant seeks both to appeal an order and to obtain a variance, the appeal must be decided before a variance may be granted. See *Miniter* v. *Zoning Board of Appeals,* 20 Conn. App. 302, 309, 566 A.2d 997 (1989) ("it was the board's duty, pursuant to General Statutes § 8-6a, to review and decide the plaintiffs' appeal before acting on the application for a variance").

West Main concedes that it appealed Wnuk's decision to the board, and it is clear from the record that the board never issued a decision on the appeal. The board, therefore, acted in violation of § 8-6a, and the trial court incorrectly upheld the variance instead of remanding the case to the board to resolve the appeal from Wnuk's decision first.

Our resolution of this issue disposes of the appeal. Because it is an issue that could arise on remand, however, we deem it appropriate to address the plaintiffs' claim that neither the alleged arbitrariness of Wnuk's decision nor the arguable uncertainty of the parking ordinances can properly support a grant of variance in this case. We agree with the plaintiffs.

The arbitrariness of a zoning enforcement officer's decision is an inappropriate basis for a finding of undue

hardship. A variance "authorizes the landowner to use his property in a manner *prohibited by the regulations.*" (Emphasis added.) *Talarico* v. *Conkling,* 168 Conn. 194, 198, 362 A.2d 862 (1975). A local zoning board can only grant a variance if " '*adherence to the strict letter of the zoning ordinance* [is] shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.' " (Emphasis added.) *Grillo* v. *Zoning Board of Appeals,* 206 Conn. 362, 368, 537 A.2d 1030 (1988). A request for a variance therefore asserts that the ordinance in question prohibits the proposed use and seeks relief from the requirements of the ordinance. In contrast, a challenge to a zoning officer's application of an ordinance asserts instead that the ordinance does *not* prohibit the proposed use. If the ordinance does not prohibit the use, then there can be no undue hardship and a variance is inappropriate. Accordingly, an allegation that a zoning enforcement officer acted arbitrarily in applying an ordinance cannot properly support the grant of a variance. We conclude that the trial court improperly allowed Wnuk's allegedly erroneous actions to serve as a basis for the finding of undue hardship needed to support a variance.[8]

The trial court also found that it was the "lack of specificity in the zoning regulations" together with Wnuk's arbitrariness in calculating the parking space requirements that formed the basis for the board's finding of undue hardship. Thus, we will also consider

[8] Furthermore, the legislature has determined that an appeal is the proper mechanism for challenging the decision of a zoning enforcement officer. General Statutes § 8-6 provides that a zoning board of appeals shall "hear and decide *appeals* where it is alleged that there is an *error in any* . . . *decision* made by the official charged with the enforcement of . . . any bylaw, ordinance or regulation . . . ." (Emphasis added.) We would undermine this statutory framework if we allowed the arbitrariness of a decision to serve as a basis for the finding of undue hardship needed to support a variance.

whether the uncertainty of a zoning ordinance may properly support a finding of undue hardship.[9]

The defendants claim that §§ 240-10 and 240-30 of the New Britain zoning ordinances are impermissibly uncertain and cause undue hardship because they provide insufficient guidance on how to classify uses like The Sting or an OTB parlor. The only authority they cite for the proposition that the uncertainty of a zoning ordinance is a proper basis for a finding of undue hardship is *Leveille* v. *Zoning Board of Appeals,* 145 Conn. 468, 144 A.2d 45 (1958).

In *Leveille,* a 1950 zone change created a commercial zone of unascertainable depth within a residential zone. The uncertainty of the depth of the commercial zone made it impossible to determine how it applied to two parcels of property. Id., 470. The property owners sought either a change of zone or a clarification of the zoning boundaries established by the 1950 zone change. After these requests were denied, they sought and obtained a variance that allowed them to use their properties commercially. Id., 471, 473. In upholding the zoning board's grant of the variance, this court held that the undue hardship was "[t]he uncertainty as to what portions of the properties . . . were placed in a commercial zone in 1950 [which] practically destroyed their salability by rendering the title of each property unmarketable." Id., 472.

*Leveille* is a unique case in our zoning jurisprudence and must be limited to its specific facts. The regulation at issue in *Leveille* was so vague that it was not even susceptible to interpretation.[10] The properties

---

[9] West Main does not claim that the ordinances are unconstitutionally vague. See, e.g., *Barberino Realty & Development Corporation* v. *Planning & Zoning Commission,* 222 Conn. 607, 618–20, 610 A.2d 1205 (1992).

[10] The regulation changed the zoning of " 'the property fronting on both sides of West Main Street' " from residential to commercial. It, however,

were not usable for residential purposes because they were surrounded by commercial enterprises, and could not be put to commercial uses because the depth of the zone was uncertain. Id., 472. In contrast, the ordinances at issue in this appeal are susceptible to interpretation and have in fact been interpreted by a zoning official. Further, West Main can employ its property for any combination of uses that does not require more than 199 on-site parking spaces. Two uses—Molly Malone's Pub and The Sting—already exist on the property.

*Leveille* must be placed in the category of cases holding that extreme financial hardship can support a grant of variance. See, e.g., *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 365 A.2d 387 (1976) (undue hardship may exist where strict application of a regulation would be tantamount to confiscation of the applicant's property).[11] We conclude that the alleged uncertainty of the zoning ordinances in question cannot support the finding of undue hardship needed for a variance.

---

provided no indication of the intended depth of the zone change. *Leveille* v. *Zoning Board of Appeals,* 145 Conn. 468, 470, 144 A.2d 45 (1958).

[11] In addition, for a hardship to justify the granting of a variance, it "must be different in kind from that affecting generally properties in the same zoning district . . . ." (Internal quotation marks omitted.) *B.I.B. Associates* v. *Zoning Board of Appeals,* 163 Conn. 615, 616, 316 A.2d 414 (1972). Even if it is assumed that the uncertainty of an ordinance could cause a hardship, a variance would ordinarily be inappropriate because an identical claim could be made by any property owner who sought approval for a use that was not specifically addressed by the ordinance. For example, any property owner who wanted to establish an off-track betting parlor but did not have sufficient on-site parking could claim hardship based on the uncertainty of § 240-10-20 of the New Britain zoning ordinances (1966), as amended. The hardship would not be unique to the owner's property, however, and therefore could not support a grant of variance. See *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 145, 215 A.2d 104 (1965) (variance inappropriate where "the rationale behind the granting of a variance for one piece of property would apply in like manner to the surrounding properties").

The judgments are reversed and the cases are remanded to the trial court with direction that they be remanded to the board for a new hearing.

In this opinion the other justices concurred.