[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 7719
The dispositive issue in this appeal is whether there was sufficient evidence before the Bolton Zoning Board of Appeals ("ZBA") to establish a valid hardship on the part of the Applicant, Mountaintop Enterprises, Inc., ("Applicant") to support the granting of the subject variance.
Facts:
On December 29, 1995 the Applicant applied to the ZBA of the Town of Bolton for a variance seeking to replace an existing 120 foot radio tower with a 260 foot radio tower in approximately the same location on Applicant's property at 130 Vernon Road, Bolton, Connecticut. See Exhibit A of Return of Record ("RR"). The application does not specifically request a variance, and no hardship is cited. However, paragraph one of the complaint has been admitted by both defendants, (ZBA and Applicant). Following a public hearing on February 15, 1996 the ZBA granted the variance by a vote of four to one stating that it was ". . . a reasonable extension of a nonconforming use." See Exhibit K and Exhibit U of RR. No mention was made of "hardship". Notice by publication was made on February 22, 1996. This appeal was timely taken on March 7, 1996.
AGGRIEVEMENT:
In the hearing before this court on June 13, 1997, the parties orally stipulated that the plaintiff at all times herein was/is the owner of residential land and building at 91 Vernon Road which land is located within 100 feet of the boundary of the land subject of the application for the variance. Accordingly, the court finds that the plaintiff is statutorily aggrieved under CGS § 8-8 (a).
DISCUSSION:
First, it should be noted that the Applicant violated § 16 C.3 of the Bolton Zoning Regulations ("Regulations") by not describing the hardship.
Secondly, as the briefs of the parties seem to indicate, the stated reason given by the ZBA, ". . . a reasonable extension of a non-conforming use," was inadequate. The parties agree, and the court finds that the present use prior to the subject action of CT Page 7720 the ZBA is a non-conforming use in a residential zone (R1). Section 3C3 of the Regulations provides in pertinent part: "no non-conformity of any kind shall be expanded or intensified . . . ." There is nothing in the Regulations about "extending" a non-conforming use. The enabling statute, CGS §8-2, states, inter-alia, that local zoning regulations ". . . shall not prohibit the continuance of any nonconforming use . . .". emphasis added. The replacement tower is not just acontinuance of a non-conforming use. Whatever the wording by the ZBA, it is still an expansion of 140 feet in the height of the tower. Even if you call it an intensification, that too is prohibited by § 3C3 of the Regulations. The only logical interpretation of extension is expansion or intensification which are prohibited.[1] Continuances of non-conforming uses are protected by statute, but only continuances. Further, the first paragraph of § 3C establishes the purpose of the Bolton regulations; namely, to diminish and permanently discontinue non-conforming uses over time.[2]
Accordingly, the reason given by the ZBA in its decision is inadequate and illegal in violation of the general statutes and the Bolton zoning regulations.
The only way this expansion can be justified is by the ZBA granting a variance of the regulations, which requires a finding of hardship if the variance is not granted. Since the ZBA did not, in its decision, even mention the word "hardship", it is necessary for the court to search the record to find the basis for the ZBA decision. WNUK v. Zoning Board of Appeals of the Cityof New Britain, 225 Conn. 691, 694-95 (1993). Also, see Ward v.Zoning Board of Appeals, 153 Conn. 141, 144 (1965).
It is, therefore, clear that there must be in the record sufficient evidence that a hardship exists. The hardship must be unique to the subject property. It must be one that originates in the zoning ordinance, and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. See Whittaker v. Zoning Board ofAppeals, 179 Conn. 650 (1980).
A financial hardship is generally not sufficient to justify a variance. The hardship must be in regard to the property, not the owner. However, if not granting the variance would result in no use of the property, than the variance should be granted. Not to grant it could be considered confiscatory. CT Page 7721
What all of this boils down to, then, is whether the Applicant presented sufficient evidence in the record to show that without the variance, the property would have no use. Further, the court must find "substantial evidence" in the record to support the reasons for the board's decision. See PropertyGroup, Inc. v. Planning Zoning Commission, 29 Conn. App. 18,27, 28, (1992) footnote 6; affirmed in Property Group Inc. v.Planning Zoning Commission, 226 Conn. 684, 692-93 (1993).
What was the evidence that without a variance, the subject of property had no use? The property is an R1 residential zone.
1. On page 2 of the transcript of the Public Hearing, February 15, 1996; Exhibit V RR, the attorney for the Applicant stated: ". . . I would propose that although it's an R1 zone, that it would be a very very impractical and difficult task to develop this for residential development and that issue is what truly constitutes a hardship with . . . a . . . with this site." This statement maintains that it would be "a difficult
task . . ." emphasis added. He does not say it can't be done or that the cost would be prohibitive. He points to the inadequacy of the road, but the road is being used now to get to the existing tower. Why can't it be used for one or more residential lots? If it is the highest point in Bolton, a residence with an impressive view might be very valuable. In any event, the attorney is not an engineer and is hardly qualified as an expert in the suitability of the use of the property for development as a residence.
2. On page 10 of the transcript, the attorney states ". . . the grade isn't recommended, I don't imagine for . . . for trying to develop this in a residential way." This is hardly definitive, and the attorney is hardly an expert.
3. Again, on page 14, in response to a question from the member, Mr. Treat, who voted against the variance, the attorney stated ". . . the hardship has to do with the topography of the property and its instability for an R1 use". This too is not evidence, and the attorney is not an expert.
4. On pages 27 and 28, a citizen complained about the hardship not being listed on the application.
5. On page 28, member Audette (and acting chairman) stated CT Page 7722 that this is not a request for a variance. This is supported by Lincoln White, the Zoning Enforcement Officer ("ZEO"), who stated "There is no use variance being applied for." Page 28. This is evidence that at least one member (the acting chairman) and the ZEO were not considering this as a request for a variance and, therefore, were not even considering whether there was a hardship.
6. Lincoln White, who has stated that this was not a request for a variance, then, on page 44 of the transcript, confirmed with Mr. Hathaway (of the Applicant) that there is about a foot of topsoil on the top of the property and then stated "That's what I recollect. That's a . . . unsuitable for sewage disposal of any sort . . . state of health . . . Connecticut Health Code. So there wouldn't be any houses . . . you couldn't build any houses on that hill but if it were to be used for its zone, as zoned."
The problem with this comment is that it's merely a vague and incomplete reference to the building of houses. Does he mean with the existing top soil? What if additional top soil were brought in? ". . . but if it were to be used for its zone, as zoned" is an incomplete sentence or phrase that does not explain what he means. Further, in what way is Mr. White qualified? The record indicates only that he is the zoning enforcement officer. What qualification does he have to assess the suitability of the land for houses? What is his expertise? Is he an engineer?[3]
7. On page 46, Mr. White does state "That zone is unfit for the use that it's zoned for in that particular area due to the lack of soils and the height . . .". Instead of "zone" he obviously means "site". However, he doesn't explain his remark further, he does not discuss whether additional soil can be brought in nor how the height makes it unfit. Also, he is hardly an expert on these subjects based upon the reasons set forth in paragraph 6 hereof.
It is clear from the record that at least one member of the ZBA did not consider the issue of hardship because he did not believe the ZBA was being asked to grant a variance. (Transcript page 28, Mr. Audette). Apparently, the ZEO believed the same thing and advised the members of the Board that a use variance was not "being applied for". Page 28, Mr. White. They seemed to believe that it was merely an extension of a non-conforming use. For the reasons stated above, this was not an extension of a CT Page 7723 non-conforming use. It was an expansion of a non-conforming use which under the zoning regulations is illegal. The ZEO and the members did not know that an extension of a non-conforming use was illegal, and at the very least some seemed to be confused as to whether they were even voting for a variance or considering a hardship as a necessary finding, with the clear exception of Mr. Treat even though Mr. White tells him incorrectly on page 16 that a hardship as a pre-requisite for a variance is not a hard and fast rule. Well, finding a genuine hardship and having substantial evidence on which to base it is a necessity. It is mandatory under the law of Connecticut. This, the ZBA failed to do.
A reading of the transcript, in particular from page 47 to the end, indicates that most of the members seemed to be aware of the issue of hardship and on page 50 it appeared that the application would be rejected 3 to 2 or 4 to 1, members having indicated their concerns with it. Then, after final comments by Mr. White, pages 52-3, which included nothing about hardship, the vote was taken in favor apparently on the belief that it was merely a reasonable extension of an existing nonconforming use. That reason, as stated above, is clearly illegal, and nothing further was said as to a hardship or the basis for it. The members appeared uncomfortable with the hardship issue so they called it a reasonable extension of a non-conforming use.
The court has searched the record and finds that there is not
substantial evidence in the record to support a finding of hardship. There is, therefore, not substantial evidence in the record to support the decision of the ZBA.
The ZBA's action in granting the application was illegal. The appeal is sustained, and judgment is hereby entered reversing the decision of the ZBA.
Rittenband, Judge