[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Alexander Sorokin and Carole Sorokin, filed with this court an administrative or record appeal of a decision by the defendant, the Zoning Board of Appeals of the town of Westport (board). In that CT Page 16141 decision, the defendant board denied the plaintiffs' application (#5814) for several variances of the requirements of the Westport Zoning Regulations (regulations) pertaining to the renovation and enlarging of their home at 21 Surf Road in Westport. The plaintiffs' property, which they purchased in 1996, is on Long Island Sound in the Residence A zone, which requires a minimum of a half acre.
The variances requested pertain to the requirements that not more that 15% of a lot be covered by structures, and that total coverage, including parking and driveways, shall not be more than 25%.[1] The plaintiffs also applied for variances of certain regulations pertaining to nonconforming lots and buildings.[2] The plaintiffs proposed to renovate their existing home and to build a new structure. Approval of a coastal area management (CAM) site plan was also sought by the plaintiffs.
The defendant board held a public hearing on August 8, 2000. The plaintiffs sought to demonstrate that literal enforcement of the regulations would result in unusual hardship and, therefore, they should be granted variances. The plaintiffs' attorney stated that: "The hardship is the reduction in size of the property through the new mean high water line established by FEMA from .52 to .46." In a decision dated August 10, 2000, the defendant board denied unanimously the plaintiffs' application for variances, stating that: "There was no hardship presented." The transcript in the return of record contains the following colloquy among members of the defendant board in denying the plaintiffs' application: "This can conform. This is a new house. The neighbors need to be verified. Survey needs to be corrected. Very large house." A different member of the board stated: "I did the calculations — 15.8% for building; 25.5% for total coverage using their figures and deducting the wetlands as shown on their survey. Mean High Water Line changing is not unique to this property. This affects all the properties in the area." Another member added: "This should be reviewed as a new house." Another member stated: "In addition to the survey being incorrect. When I looked at the plans — it didn't look like this was smaller. The numbers did not make sense when you look at the numbers and add them up."
The plaintiffs then appealed to this court, pursuant to General Statutes § 8-8 (b). In their complaint dated August 28, 2000, the plaintiffs allege that when they purchased their property in 1996, they had .52 acres, but subsequently the Federal Emergency Management Administration (FEMA) changed the mean high water line along their southerly boundary and reduced their lot size to .46 of an acre, less than the required half an acre. Because of this loss of .06 acres, or 2,600 square feet, according to the plaintiffs, their property is now nonconforming as to lot and building coverage. The plaintiffs assert that CT Page 16142 they were therefore required to obtain variances for construction that previously they could have done without variances. The plaintiffs also contend that their proposed construction would result actually in a decrease in both lot coverage and building coverage, that is, would result in a decrease of the percentage of nonconformity.[3] The plaintiffs further allege that the defendant board had previously granted a number of coverage variances on Surf Road because of reductions in lot sizes due to governmental changes in the mean high tide mark.
At a hearing held by this court on June 14, 2001, the plaintiffs were found to be aggrieved pursuant to General Statutes § 8-8 (a)(1). Whether a party is aggrieved depends on a two-part test: "(1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision." Gladysz Planning Zoning Commission, 256 Conn. 249, 256, 773 A.2d 300 (2001). Th defendant did not challenge the status of the plaintiffs as aggrieved. The plaintiff are the owners of the subject premises and hence are aggrieved for the purpose c pursuing this appeal. Bossert Corp. v. Norwalk,157 Conn. 279, 285, 253 A.2d 39 (1968).
Both parties applied for and received leave to supplement the record. General Statutes § 8-8 (j). The plaintiffs filed summaries of a number of variances obtained by various property owners along Surf Road on the theory that these owners had been in situations similar to the plaintiffs' and had received variances of total lot coverage and building coverage because of FEMA directed changes to the location of the mean high water line. The plaintiffs argue that this action by FEMA resulted in reduced lot areas and in turn necessitated variances in order to make renovations or alterations to existing structures.[4]
The defendant board supplemented the record by enclosing a subsequent application by the plaintiffs regarding their property. The plaintiffs' subsequent application was filed with the Westport Planning Zoning Commission on April 6, 2001, while this present appeal was pending. In this subsequent application, the plaintiffs sought Coastal Area Management (CAM) site plan approval of a proposed new home. The new proposal called for a smaller home and did not require variances from the defendant board. The plaintiffs' application was approved to permit them to renovate their present structure to 7,476 square feet. The building coverage in this application was 14.9% and the total lot coverage was 23.1%, both of which conform to the regulations and, hence, no variances were required. The proposed size of the residence in this present application was 8,264 square feet.
Under General Statutes § 8-6 (a)(3), a zoning board of appeals may CT Page 16143 "vary the application of the zoning . . . regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured."
Section 46-3.2 of the Westport zoning regulations contains criteria for granting variances which are similar to General Statutes § 8-6 (a) (3), viz., a variance is permitted "solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such zoning regulations would result in exceptional difficulty or unusual hardship, so that substantial justice will be done and public safety and welfare secured."
The Supreme Court, in Reid v. Zoning Board of Appeals, 235 Conn. 850,670 A.2d 1271 (1996), reviewed the law pertaining to variances, which it described as "well settled." Id., 856. "A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . Thus, the power to grant a variance should be sparingly exercised. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone . . . Variances cannot be personal in nature, and may be based only upon property conditions. . . . In fact, we have stated that [p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance. ." (Citations omitted; internal quotation marks omitted.) Id., 857. In addition, a variance must not adversely affect the municipality's comprehensive zoning scheme or plan. Grillo v.Zoning Board of Appeals, 206 Conn. 362, 368, 537 A.2d 1030 (1988).
The issue in this appeal is whether the defendant board, in denying the application for variances, acted "arbitrarily, illegally or unreasonably."Wnuk v. Zoning Board of Appeals, 225 Conn. 691, 695-96, 626 A.2d 698
(1993). As to this court's standard of review, it was held in Jaser v.Zoning Board of Appeals, 43 Conn. App. 545, 684 A.2d 545 (1996), that "[ilt is well settled that courts are not to substitute their judgment for that of the board, and that the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made CT Page 16144 after a full hearing . . . as the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotations omitted.) Id., 547-48.
The phrase "substantial" basis or evidence was defined in Rackowski v.Zoning Commission, 53 Conn. App. 636, 733 A.2d 862, cert. denied,250 Conn. 921, 738 A.2d 658 (1999), as "that which carries conviction. It is such evidence as a reasonable mind might accept as adequate to support a conclusion. It means something more that a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. Such evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotations omitted.) Id., 641-42.
It is also axiomatic that a plaintiff has the burden of proving that a zoning board of appeals has acted illegally, arbitrarily or in abuse of its discretion. Pleasant View Farms Development, Inc. v. Zoning Board ofAppeals, 218 Conn. 265, 269-70, 586 A.2d 1372 (1991). Moreover, if any one of the reasons advanced by an agency is sufficient to support its denial of a variance, then its decision must be upheld. Sakson Nursery, Inc. v.Planning and Zoning Board of Appeals, 30 Conn. App. 627, 629-30,621 A.2d 768, cert. denied, 226 Conn. 908, 625 A.2d 1379 (1993).
It is also well recognized, however, that: "[i]n light of the existence of a statutory right of appeal from the decisions of local zoning authorities . . . a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be. . . ." QualitySand Gravel, Inc. v. Planning Zoning Commission, 55 Conn. App. 533,537, 738 A.2d 1157 (1999).
The sustaining of the plaintiffs' appeal in this case would not be warranted because the subsequent successful application to the Planning 
Zoning Commission for CAM site plan approval, without the necessity for variances, albeit for a smaller home than applied for in this present case, demonstrates that the rejection of the applications for variances did not deprive the plaintiffs from all reasonable use of their property. They will be able to use their land for a renovated and enlarged single-family private residence. To justify a variance, it must be shown that the regulation in question "greatly decreases or practically CT Page 16145 destroys [the property's] value for any of the uses to which it could reasonably be put . . ." (Citations omitted; internal quotation marks omitted.) Grillo v. Zoning Board of Appeals, supra, 206 Conn. 369. According to Giarrantano v. Zoning Board of Appeals, 60 Conn. App. 446,453, 760 A.2d 132 (2000), the regulation in question must render the subject premises "practically worthless."
In the hearing before the defendant agency, there was considerable controversy regarding when the changes to mean high water took place. The plaintiffs claim that this occurred after they purchased their property in 1996, but they did not produce any specific evidence of the date that FEMA supposedly changed the mean high water mark. The defendant board argues that in the first place, FEMA does not change mean high water marks but rather such action involves the state Department of Environmental Protection and the local municipality. Secondly, the board also heard testimony from neighbors that changes to the mean high water line had occurred long before 1996. In order to demonstrate hardship based on a subsequent change of such a line, the date when such change took place had to be established in a more definite fashion. In stating that there was no hardship, the defendant apparently believed that the change proceeded the plaintiffs' purchase of the subject premises in 1996. Thus, the plaintiffs ran a foul of the holding in the recent case of Kalimian v. Zoning Board of Appeals, 65 Conn. App. 628, ___ A.2d ___, cert. denied, 258 Conn. 936, ___ A.2d ___ (2001) "which discussed the doctrine of a "Voluntarily assumed hardship." Id., 632. The court held that the application for a variance in that case should have been denied because: "any hardship [the applicant] suffered as a result of being unable to use that property as he had hoped arises not from the application of the ordinance to the property but, instead, from his own conscious decision to purchase the property despite the known prohibition." Id., 633.
The defendant makes another good point when it argues that the underlying basis for the plaintiffs' application was their desire to build a home larger than permitted by the regulations. "Personal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." Reid v. Zoning Board of Appeals, supra,235 Conn. 857.
Based on the foregoing, the plaintiffs' appeal is dismissed. Costs are to be taxed by the chief clerk of this court in favor of the defendant in accordance with General Statutes § 52-257 and Practice Book §18-5.
So Ordered. CT Page 16146
Dated at Stamford, Connecticut, this 7th day of December, 2001.
William B. Lewis, Judge T.R.