[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiffs, Collins Group, Inc. ("Collins Group") and Community Solutions, Inc. ("Community Solutions") appeal a decision of the defendant Board of Zoning Appeals of the City of New Haven ("the BZA"), sustaining a finding of "no analogous use" by the defendant Zoning Enforcement Officer ("the ZEO") and appealing conditions imposed on a use CT Page 7496 variance granted the plaintiffs by the defendant BZA. The above-captioned matter was consolidated with two other appeals, challenging the granting of said use variance, Gertz v. Zoning Board of Appeals (sic) (No. CV 00-0442824) and Zimmerman v. Community Solutions, Inc., et al (CV 00-0442892). Wilhelm Gertz was granted status as intervening defendant in CV 00-0442 840.
Collins Group is the owner of a building located at 850 Grand Avenue in the City of New Haven. Community Solutions is the proposed tenant of said premises. The property is located in a BA (General Business) district. The plaintiffs proposed to use the premises for a "rooming house that offers a comprehensive short-term residential treatment program of drug abuse treatment for young male adults, referred by the Judicial Branch, having 13 offices and an on-site staff of 8, and up to 90 residents (also offering support services to include vocational training, job development and life skills)." On or about June 1, 2000, the ZEO, Phillip R. Bolduc, determined that no analogous use was listed in the City's Zoning Ordinance. With no analogous use, the proposed use would require a variance from the BZA. On or about June 20, 2000, the plaintiffs filed an appeal of the ZEO's decision and filed an application for use variance The BZA held a public hearing on the appeal and the application on July 18, 2000. The BZA held a special meeting on August 10, 2000, at which it upheld the ZEO's decision unanimously and, by a vote of 4-1, granted the use variance, limited to 18 residents. These appeals followed. A hearing on the consolidated appeals was held on March 6, 2002.
 II
Under the zoning scheme of the City of New Haven, a finding by the ZEO of a listed use analogous to the use proposed would signify that the proposed use was permitted as of right and would obviate the need to apply to the BZA for a use variance. The dispute between the parties centers on the interpretation of § 42, "Use Regulations for Business and Industrial Districts," of the zoning regulations. Section 42 includes a "use table," which comprises an extensive list of uses and a chart indicating whether each use is permitted as of right, permitted only by special exception or not permitted, in each of the business or industrial districts. Section 42 reads in pertinent part:
"In any case where a use is not specifically referred to by the following table, its stabs under this section shall be determined by the zoning enforcement officer, by reference to the most clearly analogous use or uses that are specifically referred to by the table. When the status of a use has been so determined by the zoning enforcement officer, such CT Page 7497 determination shall thereafter have general applicability to all uses of the same type."
Transient Lodging, including a rooming, boarding or lodging house is a listed use permitted as of right in a BA district. The plaintiffs claim that several uses of the same type as that proposed have previously been found by the ZEO to be analogous to a rooming house; accordingly, the proposed use, claim the plaintiffs, is permitted of right in a BA district. The plaintiffs define the proposed use as a "short term residential treatment program for young adults" and point to various programs providing services with a residential component as being of the same type as the proposed use. Such uses include two housed at 830 Grand Avenue, a "halfway house" and an alternative to incarceration program for adult males (Exhibit 16); drug rehabilitation housing units (104-106 Park Street, and 282 Dwight Street, Exhibit 12); a "youth residential group house" (599 Howard Avenue, Exhibit 13); dwelling units for supervised transitional housing for adults dealing with mental illness (96-100 Broadway, (Exhibit 14).
The plaintiffs assign great weight to a letter dated April 14, 1987 signed by the Zoning Director, Phillip K. Bolduc, entitled: Re: Certificate of Zoning Compliance, 34-48 Legion Avenue, in which Bolduc opines that "a treatment facility containing a combination of office, sleeping, eating and meeting rooms . . ." is analogous to a rooming house "which is permitted in a BA zone." The plaintiffs claim that that use is "basically the same" as that described in Bolduc's June 1, 2000 letter finding "no analogous use." The plaintiffs claim number of clients to be served is not a valid criterion in distinguishing the proposed use from other, similar, existing uses, because nowhere in the use table is size indicated as a factor in determining the status of a use.
The defendants claim that the size (90 clients) of the proposed use and the characteristics of its clientele (males, 16 to 25 years of age, awaiting trial) distinguish the proposed use from existing uses cited by the plaintiffs. The defendants further claim a use of the same type must be exactly like the proposed use.
 III
Pursuant to General Statutes, § 8-6, and § 63.B of the Zoning Ordinance of the City of New Haven, the defendant BZA is empowered to hear and decide appeals from orders, requirements or decisions made by the ZEO. In hearing an appeal of a ZEO's decision the BZA acts administratively, in a quasi-judicial capacity, Lawrence v. Zoning Boardof Appeals, 158 Conn. 509, 513-14. In hearing and deciding an appeal from a ZEO's decision, the BZA hears and decides said appeal de novo and the CT Page 7498 action of the ZEO is entitled to no special deference by the court,Caserta v. Zoning Board of Appeals, 226 Conn. 80, 88-90. "[F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board." Id., at 82.
 IV
The BZA, pursuant to General Statutes, Section 8-6a, decided the issues presented by the appeal of the ZEO's determination before it addressed the application for variance. In the Minutes of its special public meeting of August 10, 2000 (Exhibit 26), the BZA stated its reasons for sustaining the ZEO's determination of no analogous use. The BZA included, as part of its decision, the report of the City Plan Department (Exhibit 7), incorporated by reference. Where [a Board] does state its reasons for a decision the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the [Board] is required to apply under the zoning regulations, Irwin v. Planning ZoningCommission, 244 Conn. 615, 629 (citation, quotation marks omitted).
With reference to the appeal of the ZEO's decision, "The Board found that because the proposed use was much larger than any use presented to the City for review (90 clients, plus staff, plus visitors, plus suppliers/deliveries), combined with a lack of exterior recreation space, a lack of interior recreation space, and the broad range of ages from 16 to 25 years old, that no analogous use existed."
At the outset, it should be recognized that the terms "analogous" and "of the same type" are not synonymous. Neither term is defined in the ordinance. The New Haven Zoning Ordinance provides that words not defined in the ordinance shall be as defined in the most current edition of Webster's New World Dictionary, College Edition (Ordinance, Article I, Section 1). That dictionary defines "analogous" as "similar or comparable in certain respects." Recognizing that almost any human endeavor can be said to be similar in some respects to any other human endeavor, an overly broad construction of "analogous" could render the zoning regulations meaningless. The ZEO and the BZA are afforded broad discretion in determining if a proposed use is sufficiently similar to a listed use to be deemed "analogous" to such listed use. The plaintiffs in this matter do not claim that the proposed use fits within the literal definition of "rooming house" so as to require a finding of "analogous use."
Rather, the thrust of the plaintiffs' claim is that the proposed use is CT Page 7499 permitted as of right because other uses of the same type have previously been found analogous to a listed use, that is, analogous to a rooming house.
In its decision sustaining the ZEO's decision, the BZA found that "no analogous use existed" "because the proposed use was much larger than any use presented to the City for review. . . , combined with a lack of . . . recreation space, and the broad range of ages from 16-25 years old."
The course of action followed by the BZA in reaching its decision is discernible from the decision's text.
In determining whether to reverse or sustain the ZEO's decision of no analogous use, the BZA compared the proposed use to uses submitted to it by the plaintiffs, which the plaintiffs claimed were previously established uses as of right by virtue of Ordinance, § 42 and its "general applicability" clause. While the BZA found that the "list of claimed `similar uses' . . . carried little weight . . .", the BZA nonetheless compared the proposed use to those examples submitted by the plaintiffs and determined that the uses submitted were not "of the same type."
The dictionary defines "type," inter alia, as ". . . 3. the general form, structure, plan, style, etc., characterizing or distinguishing the members of a class or group . . ." and that dictionary defines "same" as, inter alia, "1. being the very one, identical. 2. alike in kind, quality, amount, or degree; corresponding . . ." Thus, certain similarities between uses do not establish that said uses are "of the same type." The Court finds that, in determining whether the proposed use is of the "same type" as existing uses, the BZA is entitled to consider, inter alia the size of the proposed use and the characteristics of the clientele to be served. and to require a high degree of likeness "in kind, quality, amount or degree," between a proposed use and those posited by the plaintiffs as existing uses of the same type, in order to trigger the "general applicability" provision of § 42. The plaintiffs, in defining the proposed use as a "short term residential treatment program for young adults," and claiming the proposed use is "basically the same" as that described in the Bolduc letter of April 14, 1887, truncated the description of the proposed use contained in the Bolduc letter of June 1, 2000. The Court finds that there was substantial evidence in the record to support the BZA's determination that the existing uses cited by the plaintiffs were not of the same type as the proposed use.
In determining whether the proposed use was the same type as existing uses cited by the plaintiffs, the BZA took into consideration the target CT Page 7500 user group, males, ages 16 to 25, incarcerated awaiting trial, and considered the projected number of clients, 90. The plaintiffs have failed to establish, by a fair preponderance of the record, that the BZA, in sustaining the ZEO's determination of "no analogous use," acted illegally, arbitrarily or in abuse of its discretion.
 V
The plaintiffs, relying on the doctrine of equitable estoppel, argue in the alternative that the "municipal defendants are estopped from claiming that the proposed use is not permitted (or to enforce or interpret its regulations to that effect)." The plaintiffs asserted this claim at the July 18, 2000 hearing before the BZA and introduced testimony and documents in support of this claim. The plaintiffs claim they expended substantial sums of money on the project in reliance on assurances of approval given by City officials.
In special circumstances, a municipality may be estopped from enforcing its zoning regulations, Dornfried v. October Twenty-Four, Inc.,230 Conn. 622, 634 (citation omitted). There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. Dupuis v. SubmarineBase Credit Union, Inc., 170 Conn. 344, 353 (quotation marks, citations omitted). The general rule applicable to the invocation of the doctrine of estoppel against municipal corporations should be limited and invoked (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the zoning or building regulations. Id., at 354 (citations omitted).
A chronology, submitted to the BZA at its July 18, 2000 hearing and attached to the plaintiffs' memorandum of law as Appendix A, purports to demonstrate that the plaintiffs were induced by the words and actions of City officials to expend hundreds of thousands of dollars on the purchase and renovation of 850 Grand Avenue. While the Court does not doubt tat substantial sums were spent on the purchase and renovation of said property, the Court is not persuaded that the plaintiffs were unjustifiably induced to do so, so as to support a claim of municipal estoppel.
Among the documents cited in support of the claim of estoppel are a certificate of zoning compliance dated February 5, 1999, issued by the CT Page 7501 Zoning Administrator, Francesco Gargiulo. (Exhibit 9). The use proposed is described: "A tenant proposes to be the sole tenant and operate a program for adolescents in the care of the Department of Children and Families. This program would operate a licensed rooming house for 40 individuals. There will be will be offices and a staff level not to exceed 15 people." However, the expenditures claimed by the plaintiffs were not incurred to establish a program for 40 adolescents in the care of the Department of Children and Families, but rather, such expenditures were incurred to establish a program for up to 90 young males awaiting trial. The Court finds that the certificate of zoning compliance issued with reference to a program for 40 adolescents does not support a claim of municipal estoppel with regard to expenditures incurred to establish a program for up to 90 young men awaiting trial.
The plaintiffs also cite a certificate of zoning compliance dated September 28, 1999 with reference to a use described as: "A tenant proposes to be the sole tenant and operate a program for young adults with pre-trial status in the care of the Court Support Services Division of the Connecticut Judicial Branch. This program would operate a licensed rooming house for 40 individuals. There will be offices and a staff level not to exceed 10 people." Here, the clientele to be served appears to be the same as that to be served by the project at issue. However, a certificate of zoning compliance issued with reference to a program serving 40 young men awaiting trial does not support a claim of municipal estoppel with regard to expenditures incurred to establish a program serving up to 90 such young men.
Other claims of words or actions by other City officials, e.g., the acting building inspector, Dan O'Neil, the fire marshal, Frank Delmarre, Living Cities Initiative Specialists, Rafael Ramos and Frank D'Amore, provide no basis for claiming municipal estoppel, for none of these employees had the authority to issue certificates of zoning compliance or purported to issue such certificates. Nor does the issuance of demolition or building permits by the City's building department or approval by the fire marshal of life safety systems form a basis for a claim of municipal estoppel.
The plaintiffs did not receive a certificate of zoning compliance for the use at issue prior to expending sums on the purchase and renovation of 850 Grand Avenue and were not unjustifiably induced to make such expenditures by the words or actions of City officials. The plaintiffs have failed to establish, by a fair preponderance of the evidence, that the defendant BZA is estopped from "claiming that the proposed use is not permitted (or to enforce or interpret its regulations to that effect)."
 VI
CT Page 7502
As indicated, supra, the BZA, after sustaining the ZEO's determination of "no analogous use", went on to consider the plaintiffs' application for variance and granted said application, with conditions. The plaintiffs appeal said BZA decision, claiming that there is not substantial evidence in the record to support the condition imposed on the applicants limiting the number of residents to 18.
In Zimmerman v. Community Solutions, Inc., (No. CV 000442892), the plaintiff claims the BZA's action in granting the said variance was illegal, arbitrary and in abuse of discretion in that there was no substantial evidence in the record which would permit the BZA to make the requisite finding of hardship. In Gertz v. Zoning Board of Appeals, (sic) (No. CV 000442824) the plaintiff claims that the BZA's action in granting said variance was illegal, arbitrary and in abuse of discretion in that there was no substantial evidence in the record which would permit the BZA to find hardship, or find that, absent the said variance, no reasonable use can be made of the subject property and that the proposed use will not impair the essential character of the area.
 VII
Pursuant to General Statutes, § 8-6, the BZA has the authority "to determine and vary the application of the zoning by-laws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such by-laws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . . ." In addition, § 63.C.2, of the City's Zoning Ordinance, entitled "Special Treatment of Use Variances" reads "It is recognized that variances of the use regulations in the zoning ordinance present special problems not occurring in the case of variances of other types, and that the courts have carefully defined the scope of the Board's powers with respect to use variances. Therefore, the Board shall not grant any use variance under paragraph (1) above unless:
 a) the zoning regulations allow no reasonable use to be made of the property in question for reasons peculiar to the property and not applicable to the area as a whole;
b) the use proposed is the minimum variance necessary CT Page 7503 to allow a reasonable use of the property; and,
 c) the use will not impair the essential character of the area or the objectives of the comprehensive plan of the City.
Section 63.C.3 of said ordinance, entitled "Conditions," reads, in pertinent part: "In granting any variance under paragraph (1) or (2) above, the Board may attach such additional conditions and safeguards as are deemed necessary to protect the neighborhood, such as, but not limited to, the following: . . . d) limitation of size, number of occupants, method or time of operation, or extent of facilities."
A variance authorizes the landowner to use his property in a manner prohibited by the regulations, Wnuk v. Zoning Board of Appeals,225 Conn. 691, 697 (citation, quotation marks, italics omitted). A request for a variance therefore asserts that the ordinance in question prohibits the proposed use and seeks relief from the requirements of the ordinance. Id. The granting of a variance must be reserved for unusual or exceptional circumstances, Bloom v. Zoning Board of Appeals, 233 Conn. 198,206-07 (citations omitted).
"An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone," Bloom v.Zoning Board of Appeals, supra, at 207 (citation omitted). Accordingly, a zoning board of appeals is authorized to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning ordinance. A mere economic hardship or a hardship that was self created, however, is insufficient to justify a variance; and neither financial loss nor the potential for economic gain is the proper basis for granting a variance, Id., at 207-08 (citations, internal quotation marks omitted). "The hardship which justifies a board of zoning appeals in granting a variance must be one which originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved,"Whitaker v. Zoning Board of Appeals, 179 Conn. 650, 658 (citations omitted). The hardship must arise from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owner's control, Pike v.CT Page 7504Zoning Board of Appeals, 31 Conn. App. 270, 274 (citations, quotation marks omitted). The comprehensive plan is found in the zoning regulations themselves, Pike v. Zoning Board of Appeals, supra, at 277.
When, as here, the Board acts in an administrative capacity, the evidence to support its reasons must be substantial, Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525, 540. The "substantial evidence" standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, Kaufman v. Zoning Commission,232 Conn. 122, 151. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence, Samperi v. InlandWetlands Agency, 226 Conn. 579, 588 (citations, internal quotation marks omitted). "Substantial evidence" means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. Board of Education v. Commission on HumanRights and Opportunities, 176 Conn. 533, 538.
 VIII
In stating the reasons for granting, with conditions, the variance at issue, the BZA incorporated by reference its findings with reference to the appeal of the ZEO's decision as well as the City Plan Department's Advisory Report (Exhibit 7). The BZA found that "the applicant met the criteria of the ordinance to permit granting of a use variance." As indicated, said criteria include:
Section 63.C.2. a: "the zoning regulations allow no reasonable use to be made of the property in question for reasons peculiar to the property and not applicable to the area as a whole."
The hardship asserted by the applicants is: "Without the variance the owner is deprived of any reasonable use [of] the property (and deprived of a use that has previously been allowed to other similar users). The block has changed substantially and is no longer Adapted (sic) to the old retail uses made of it many years ago. Other permitted uses such as general office uses have tried and failed." As to why the hardship is peculiar to the property at issue and not applicable to the area as a whole, the applicants assert: "The property is located near I-91 but distant from other traditional general business uses. The area has been in significant transition from the original retail uses made of the area." Further, the applicants state: "Yes. No reasonable use can be made of this property because it has been gutted and no users of otherwise permitted users (sic) have been found." (Exhibit 2). CT Page 7505
In response, the City Plan Department states: "The Department concurs that the strip commercial corridor between State Street and I-91 is an area in transition, with a mixture of single and multi-story structures, and notes that many of the structures upper floors are disused. The corridor now also is the home of as many as a dozen social service type uses, some with residential components." (Exhibit 7).
In its decision, the BZA found, inter alia that "the building was functionally obsolete and could no longer attract permitted uses in the zone for the premises."
After review of the record the Court concludes there was substantial evidence in the record to support the BZA's grant of variance. At the July 18, 2000 hearing the plaintiffs, through counsel, stated that the subject property "had not been saleable for a couple of years or useable, but there are other people coming in but it sat and it had been on the market and not gone anywhere." (Exhibit 25, p. 110). Opponents of the application for variance testified that there were numerous retail businesses and professional offices in the immediate area (Exhibit 25, p. 97, p. 102), two of which were recent arrivals, (See, too, the list of businesses attached to Exhibit 20). Based on the record, the BZA could conclude that the inability of the subject property to attract permitted uses while other properties in the area did so attract, was a hardship peculiar to the subject property. In stating that "the building was functionally obsolete, and could no longer attract permitted uses in the zone for the premises," the BZA found, in effect, that, absent a variance, "the zoning regulations allow no reasonable use to be made of the property in question for reasons peculiar to the property and not applicable to the area as a whole."
The BZA, in finding that "in approving the variance with reduced client numbers and conditions, it could safeguard the neighborhood" and "prevent additional burden on a neighborhood which has almost reached its saturation point for similar uses," found, in effect, that the proposed use as modified would not "impair the essential character of the area or the objectives of the comprehensive plan of the City." The BZA also found that limiting the number of residents to 18 established the minimum variance necessary to allow reasonable use of the subject property. The Court finds there was substantial evidence in the record to support these findings. This evidence includes the finding by the City Plan Department that "[t]he corridor [between State Street and I-91] now also is the home of as many as a dozen social service type uses, some with residential components." The BZA, in imposing conditions on the variance, clearly sought to protect the essential character of the area. Pursuant to said regulations, numerous "social service type uses, some with residential components", have been established in the BA district and throughout the CT Page 7506 City. The Court finds the variance granted here comports with the objectives of the comprehensive plan of the City.
 VIII
Section 63.C.2. b) of the zoning ordinance requires the BZA, when granting a variance, to find that "the use proposed is the minimum variance necessary to allow a reasonable use of the property." Section 63.C.3. permits the BZA to attach conditions to a grant of variance, including: "d) limitation of size, number of occupants, method or time of operation, or extent of facilities."
In their application for variance sought a capacity of up to 90 residents. The City Plan Department found "the proposal as submitted is not a minimum variance to allow reasonable use of the property," and recommended the number of residents be limited to 38. (Exhibit 7). The BZA found that "more than 18 clients would alter the character of the neighborhood, and that the variance is the minimum necessary to permit reasonable use of the property." The BZA, having heard the testimony of neighborhood residents concerning the prevalence of social service programs, some with residential components, and the impact such programs had on the neighborhood, concluded that the neighborhood had "almost reached its saturation point" and limited the number of occupants to 18. The Court finds there was substantial evidence in the record to support the BZA's decision.
 IX
With regard to CV 00-0442840, Collins Group, Inc. v. Board of ZoningAppeals, the plaintiffs have failed to establish, by a fair preponderance of the evidence, that the BZA, in sustaining the ZEO, s determination of "no analogous use", acted illegally, arbitrarily and in abuse of discretion, and failed to establish that the BZA, in imposing a condition limiting residents to 18, acted illegally, arbitrarily and in abuse of discretion. Accordingly, the appeal (CV 00-0442840) is dismissed and judgment may enter in favor of the defendants, the Board of Zoning Appeals of the City of New Haven and Wilhelm Gertz and against Collins Group, Inc. and Community Solutions, Inc.
With regard to CV 00-0442 824, Gertz v. Zoning Board of Appeals (sic), the plaintiff has failed to establish, by a fair preponderance of the evidence, that the BZA, in granting the application for variance of Collins Group and Community Solutions, acted illegally, arbitrarily or in abuse of discretion. Accordingly, the appeal is dismissed and judgment may enter in favor of the defendants, the Board of Zoning Appeals of the City of New Haven, Collins Group, Inc. and Community Solutions, Inc. and CT Page 7507 against Wilhelm Gertz.
With regard to CV 00-0442892, Zimmerman v. Community Solutions, Inc., the plaintiff has failed to establish, by a fair preponderance of the evidence, that the BZA, in granting the application for variance of Collins Group and Community Solutions, acted illegally, arbitrarily and in abuse of discretion. Accordingly, the appeal is dismissed and judgment may enter in favor of the defendants, the Board of Zoning Appeals of the City of New Haven, Collins Group, Inc. and Community Solutions, Inc. and against Lorraine Zimmerman.
By the Court,
 ___________________ Downey, J.T.R.